MICHELE LECOMTE CHAMBERS[1] & others[2] vs. GOLD MEDAL
BAKERY, INC. & others.[3]

Bristol. October 4, 2012. - February 8, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Corporation,* Board of directors, Close corporation, Derivative action, Officers
and agents, Stockholder. *Privileged Communication. Evidence,* Privileged
communication, Privileged record. *Practice, Civil,* Subpoena. *Subpoena.*
*Fiduciary. Attorney at Law,* Attorney-client relationship, Communication
with represented party, Work product.

The attorney-client privilege and work product protection prevented disclosure
to the plaintiff director-shareholders of a closely-held corporation of
privileged or protected documents as concerned the litigation and an earlier
litigation, where there was sufficient evidence that the plaintiffs' interests
were adverse to the corporation, in that the plaintiffs, seeking to obtain a
buyout of their stock, brought multiple suits directly against the corpora-
tion in a short span of several years and were represented by their own
counsel throughout that period [389-398]; further, given this court's conclu-
sion that the plaintiffs' interests were adverse to the corporation, this court
declined to address separately and apart from their status as directors their
status as shareholders [398].

CIVIL ACTION commenced in the Superior Court Department on
April 3, 2009.

A motion for a protective order was heard by *Frances A. Mc-*
*Intyre, J.*

[1] Individually; as cotrustee of the Georgette C. LeComte 1984 Children's
Trust; as attorney-in-fact for Leonidas LeComte; and derivatively as a
shareholder of Gold Medal Bakery, Inc., and Bakery Products Corporation.

[2] Georgette C. LeComte, individually; as cotrustee of the Georgette C.
LeComte Irrevocable Trust; as cotrustee of the Leonidas A. LeComte 1984
Children's Trust; as attorney-in-fact for Leonidas LeComte; and derivatively
as a shareholder of Gold Medal Bakery, Inc., and Bakery Products Corpora-
tion; and Michael A. Kehoe, as cotrustee of the Georgette C. LeComte 1984
Children's Trust; as cotrustee of the Georgette C. LeComte Irrevocable Trust;
and as cotrustee of the Leonidas A. LeComte 1984 Children's Trust.

[3] Bakery Products Corporation; Roland S. LeComte; Brian R. LeComte;
Kane and Kane, Inc.; Joel Kane; and Joseph Cordeiro; and Robins, Kaplan,
Miller & Ciresi, LLP, nonparty appellant.

The Supreme Judicial Court granted an application for direct appellate review.

*John N. Love* (*Anthony A. Froio* with him) for the defendants.

*Howard M. Cooper* (*Heidi A. Nadel & Kimberly E. Dean* with him) for the plaintiffs.

SPINA, J. The issue presented in this appeal is whether a closely-held corporation and its corporate counsel and accountants can assert attorney-client privilege or work product protection against director-shareholders asserting claims against the corporation and its directors. Because there is sufficient evidence that the plaintiffs' interests are adverse to the interests of the corporation as concerns the 2007 and present litigations, we conclude that the plaintiffs are not entitled to privileged or protected information relating to the two litigations.

*Background and procedure.* We recount the facts in particular detail because of their significance to the disposition of this case. The story leading to the present appeal begins with two brothers who were in the bakery business together. The brothers each owned fifty per cent of two closely-held companies[4] (collectively, Gold Medal), which have grown into major suppliers of wholesale bakery products in New England.

The individual parties to the present action are split along family lines, with each side of the litigation representing the legacy of one of the brothers. On one side are Georgette LeComte and Michele LeComte Chambers, respectively widow and daughter of one of the brothers, who together own fifty per cent of Gold Medal stock. Both joined Gold Medal's four-seat board of directors in 2008,[5] assuming two of the four, or fifty per cent, of the seats. Georgette since has been replaced as director by her designee, Michael Kehoe.[6] These three individuals are the plaintiffs.

On the other side of the dispute are Roland LeComte and Florine Lecomte, who, as son and daughter-in-law respectively,

---

[4]The companies are Gold Medal Bakery, Inc., and Bakery Products Corporation.

[5]Both joined Gold Medal's board of directors pursuant to a settlement agreement that we discuss later.

[6]Gold Medal bylaws allow stockholders holding at least twenty-five per cent of stock to designate one director to the corporate board.

represent the other brother's legacy. These individuals collectively own fifty per cent of Gold Medal stock and occupy the remaining two seats on the board. This side of the family tree has greater involvement in Gold Medal's day-to-day affairs: Roland serves as president and his son, Brian Lecomte, serves as secretary and treasurer. Roland Lecomte and Brian Lecomte are individual defendants.[7] Gold Medal is also a defendant,[8] as are an accounting firm, Kane and Kane, Inc., and its principals, Joel Kane and Joseph Cordeiro. The defendants joined the law firm of Robins, Kaplan, Miller & Cerisi LLP (RKMC), which serves as Gold Medal's corporate counsel, in this appeal. RKMC plays a central role in the present dispute as keeper of the documents the plaintiffs seek to discover.

The opposing branches of the family tree paint drastically different pictures of the dynamic within Gold Medal. The plaintiffs claim that they have been frozen out of Gold Medal affairs and denied access to basic information about Gold Medal. They assert that the individual defendants maintain secrecy to conceal wrongdoing. The defendants, on the other hand, assert that the plaintiffs distanced themselves from Gold Medal affairs. Of greatest significance, the defendants claim that the plaintiffs have been seeking a buyout from Gold Medal for years, and that any information they seek is only to advance their goal of maximizing the value of their shares.

Not surprisingly, this strained family dynamic prompted the parties to take legal action. In 2006, an attorney for the plaintiffs sent a request for various corporate and financial records to RKMC. When this request did not result in the production of requested information, the plaintiffs, in 2007, filed a direct action against Gold Medal seeking access to information.[9] One

---

[7]Florine Lecomte is not a named defendant. We acknowledge her amicus brief.

[8]The plaintiffs argue that Gold Medal is not a proper party to this appeal. This contention is meritless. Not only is Gold Medal party to the underlying litigation, but its attorney-client privileged materials are at issue here. G. L. c. 231, § 118.

[9]At the time of the 2007 lawsuit, the plaintiffs had not yet assumed their seats on the Gold Medal board of directors, so they sued in their capacity as shareholders. The law firm of Robin, Kaplan, Miller & Cerisi LLP (RKMC) represented Gold Medal in that suit and the plaintiffs retained their own counsel.

purpose of the 2007 suit was to investigate Gold Medal's financial status "for the purpose of ultimately arriving at a possible sale price for [the plaintiffs'] stock." The lawsuit settled in 2008[10] pursuant to an agreement that included a promise that the plaintiffs could access certain corporate documents and audit Gold Medal. By the terms of the 2008 settlement agreement, the "[p]laintiffs intend to audit [Gold Medal] for the purpose of facilitating a sale of the [p]laintiffs' shares to [Gold Medal] and/or [Gold Medal's] other shareholders." The settlement agreement also bound the parties to enter into good faith negotiations for a global buyout of all of the plaintiffs' interests in Gold Medal after the plaintiffs completed a valuation.

The instant lawsuit arose, in part, out of an alleged violation of the settlement agreement. In 2009, the plaintiffs, in their capacity as shareholders and directors instituted this action and asserted direct and derivative claims against the individual defendants and Gold Medal. The reason for the direct claims is that, according to the plaintiffs, the individual defendants intentionally kept basic financial information about Gold Medal from the plaintiffs in an effort to conceal wrongdoing and "to achieve a buy-out or redemption of the [p]laintiffs' shares on unfavorable terms that provide less than fair value for the shares." The wrongdoing alleged in the derivative claims is mismanagement of Gold Medal amounting to breach of fiduciary duty.[11]

A central point of disagreement between the parties concerns the motive underlying the present action. The plaintiffs contend that any discussion of a potential buyout is in the best interests of Gold Medal, and that they only sued Gold Medal as a necessary party in a predominately derivative lawsuit against the individual defendants for breach of fiduciary duty. The defendants allege that the plaintiffs' main purpose in pursuing this action, like the 2007 lawsuit, is to force Gold Medal to buy out

---

[10]As part of the 2008 settlement agreement, the plaintiffs assumed seats on Gold Medal's board of directors. Thus, following the 2008 settlement agreement, the plaintiffs and the defendants each occupied fifty per cent of the board seats.

[11]The multiple-count complaint includes allegations of self-dealing, waste of corporate assets, and usurpation of corporate opportunities. It also includes claims of violation of shareholders' and directors' inspection rights pursuant to G. L. c. 156D, §§ 16.02 and 16.05.

their shares at a premium. A judge, ruling on a motion to remove confidentiality designations of the deposition testimony of one of Gold Medal's accountants, observed that "[v]aluation of the corporations so that various family members can obtain their due is the apparent ultimate goal of the litigation."

Following the denial of the defendants' motion to dismiss, the plaintiffs pursued document discovery and served a subpoena duces tecum on RKMC as keeper of Gold Medal's corporate records. The discovery dispute that is the subject of the present appeal arose out of a challenge to an order requiring production of the requested documents. The subpoena listed thirteen categories of documents,[12] and RKMC objected[13] to every request on the ground that it implicated documents protected as attorney-client privileged or attorney work product. RKMC moved for a protective order to quash the subpoena,[14] and a discovery master was appointed to decide the motion.[15]

[12]The thirteen categories of documents are summarized as follows: (1) retention letters; (2) billing records; (3) client files; (4) corporate communications; (5) Kane and Kane communications; (6) Kane communications; (7) Cordeiro communications; (8) Florine Lecomte communications; (9) Gold Medal Bagel Bakery and Gold Medal properties documents; (10) plaintiff communications; (11) corporate records; (12) ethical opinions; and (13) consultant documents.

[13]Although the plaintiffs make much of whether either individual defendant instructed RKMC to assert the privilege on Gold Medal's behalf, an attorney presumptively has authority to claim the privilege on a client's behalf. See Mass. G. Evid. § 502(c) (2012) (who may claim privilege); Mass. R. Prof. C. 1.6 (a), 426 Mass. 1435 (1998) (confidentiality of information).

[14]RKMC claims that it produced over 1,000 nonprivileged or nonprotected documents in response to the plaintiffs' request.

[15]We note that a third lawsuit was brought during the pendency of this action. In 2010, the plaintiffs brought a direct action for a declaratory judgment against Gold Medal. In the 2010 action, which was dismissed voluntarily, the plaintiffs sought to void a 1981 stock purchase agreement, which governs the buyout of shares and requires arbitration of share value, on the ground that it was superseded by the 2008 settlement agreement. *Chambers* v. *Gold Medal Bakery, Inc.*, 83 Mass. App. Ct. 234, 241 n.8 (2013). For further discussion, see generally *Chambers* v. *Gold Medal Bakery, Inc.*, *supra*. This suit is relevant for our purposes only as evidence of the plaintiffs' principal interests. According to the plaintiffs' complaint in the 2010 direct action, "beginning in or about late 2006, the parties were actively discussing a broader buy-out [and] how a buy-out would be handled." The plaintiffs "engage[d] an accounting firm to obtain a valuation . . . for the purposes of determining a price at which . . . [to] sell all of their shares in Gold Medal Bakery." We also note that the plaintiffs pursued this action directly and solely against Gold Medal.

The discovery master denied RKMC's motion for a protective order and ordered RKMC to produce nearly all requested documents[16] because he concluded that RKMC could not assert attorney-client privilege against the plaintiffs in their capacity either as directors or as shareholders. He first reasoned that, as two of four Gold Medal directors, the plaintiffs are an "integral and essential part" of Gold Medal management. See G. L. c. 156D, § 8.01 (*b*) ("[a]ll corporate power shall be exercised by or under the authority of . . . its board of directors"); Gold Medal bylaws ("[t]he directors shall have and exercise full control and management of the affairs of the corporation"). Relying on *Chronicle Pub. Co.* v. *Hantzis*, 723 F. Supp. 270 (D. Mass. 1990), the discovery master stated that as part of Gold Medal's managing control group, the plaintiffs have the "power to invoke or waive [Gold Medal's] attorney-client privilege . . . in accordance with their fiduciary obligations." *Id.* at 273, citing *Commodity Futures Trading Comm'n* v. *Weintraub*, 471 U.S. 343, 348-349 (1985). The discovery master also analogized to the joint client privilege exception, discussed in *Federal Deposit Ins. Corp.* v. *Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000), citing *Beacon Oil Co.* v. *Perelis*, 263 Mass. 288, 293 (1928), and determined that, because "directors are joint corporate managers, they stand in the same position with respect to communications with corporate counsel as they would be if they were the joint clients of corporate counsel."

The discovery master also determined that the plaintiffs were entitled to privileged material as Gold Medal shareholders. He applied the nine-factor test set forth in *Garner* v. *Wolfinbarger*, 430 F.2d 1093, 1104 (5th Cir. 1970), cert. denied sub nom. *Garner* v. *First Am. Life Ins. Co.*, 401 U.S. 974 (1971),[17] to the facts and found that the plaintiffs made a showing of good cause that the attorney-client privilege should not be invoked to preclude their access to privileged communications.

---

[16]The motion for a protective order was allowed only to the extent that it concerned "any person or entity where the fees were paid [by Gold Medal], since those persons or entities might have valid privilege claims separate and distinct" from Gold Medal.

[17]The discovery master acknowledged that *Garner* v. *Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), cert. denied sub nom. *Garner* v. *First Am. Life Ins. Co.*, 401 U.S. 974 (1971), never before had been applied in Massachusetts.

RKMC moved for review of the discovery master's decision, and the reviewing judge affirmed the discovery master's production order. The judge stated that the "[a]ccess to attorney-client records [to which the plaintiffs were entitled] includes access to work product."

The case comes before us on an interlocutory appeal from the order requiring RKMC to produce documents described in the plaintiffs' subpoena. We granted the plaintiffs' application for direct appellate review to consider whether their status as director-shareholders entitles them to access to the requested information, or whether the defendants and their counsel and accountants may assert attorney-client privilege or work product protection to prevent disclosure. We conclude, on the narrow facts of this case, that the plaintiffs' interests are adverse to Gold Medal for purposes of attorney-client privilege and work product protection as concerns documents generated in anticipation of or related to the 2007 and present litigations. Therefore, we vacate the order for the production of documents to the extent that it implicates privileged or work-product protected material as relates narrowly to the 2007 and present litigations, which the plaintiffs asserted against Gold Medal.

*Discussion.* On appeal from a decision on a privilege claim, "we review the trial judge's rulings on questions of law de novo."[18] *Commissioner of Revenue* v. *Comcast Corp.*, 453 Mass. 293, 302 (2009). Where questions of law and fact are implicated, our review "generally" is de novo. *Id.* at 303.

1. The defendants argue that the plaintiffs are not entitled to the requested information because, as nonmajority[19] directors, they lack authority to waive the attorney-client privilege on Gold Medal's behalf. Quoting *Symmons* v. *O'Keefe*, the defendants assert that the "plaintiffs' position as directors did not entitle them to waive [the attorney-client] privilege." The defend-

---

[18]The plaintiffs devote much time to arguing that the defendants raise issues now that they did not raise below. The plaintiffs confuse fuller development of arguments with novel legal theories. See generally *Century Fire & Marine Ins. Corp.* v. *Bank of New England-Bristol County, N.A.*, 405 Mass. 420, 421 n.2 (1989). The legal issues in this appeal are the same as those below.

[19]The plaintiffs hold two of four seats on the board of directors. Thus, like the individual defendants, they are neither in the minority nor in the majority on the board.

ants also point to the plaintiffs' inability to cull a majority of the votes on the board to waive Gold Medal's attorney-client privilege.[20] The defendants further argue that the plaintiffs should be precluded from accessing the requested documents because, unlike joint clients, the plaintiffs are adversaries of Gold Medal. The defendants highlight the fact that the plaintiffs, represented by their own counsel, have sued Gold Medal directly multiple times in a short span of time. The defendants also ascribe self-interested motives to the plaintiffs, claiming that the ultimate goal of the "serial" litigation is to obtain a higher stock buyout price from Gold Medal and not to advance the best interests of the company. Moreover, they argue that allowing the plaintiffs to access Gold Medal's privileged information would give them an unfair litigation advantage.

The plaintiffs counter that their status as one half of the board of directors of Gold Medal entitles them to the requested documents on the ground that they are within the circle of Gold Medal privilege. See G. L. c. 156D, § 8.01. They contend that the discovery master properly concluded that they are in the same position as the individual defendants as joint corporate managers; thus, the "joint client" analogy justifying document production is appropriate.[21] The plaintiffs also reject the notion that they are adversaries of Gold Medal. They emphasize the significant derivative claims in the present litigation and argue that the very nature of a derivative suit — an action brought on a company's behalf, vindicating a company's rights, asserted by a plaintiff standing in the shoes of the company — indicates common interests with Gold Medal's. The plaintiffs further urge that, to the extent Gold Medal is named as a defendant, it is only as a matter of form as owner of the records; thus, the

---

[20]Citing *Commodity Futures Trading Comm'n* v. *Weintraub*, 471 U.S. 343, 348-349 (1985), the defendants also argue that the plaintiffs — unlike the defendant president and treasurer officers of Gold Medal — do not behave like corporate "managers," and thus have no right to privileged documents. They assert that the plaintiffs play no role in Gold Medal's day-to-day affairs and have no experience in the bakery business. Thus, according to the defendants, the plaintiffs are not "corporate managers" falling within Gold Medal's attorney-client privilege.

[21]To the extent that they have not been involved in the day-to-day affairs of the company, the plaintiffs claim that it is because the defendants have precluded them from assuming a more active role.

plaintiffs are not true adversaries of Gold Medal. To the accusation of self-interested motives, the plaintiffs stress that their only concern is the best interests of the corporation.

We conclude that the plaintiffs' interests are adverse to Gold Medal as narrowly concerns the 2007 and instant litigations. Thus, to the extent that there are documents that qualify as attorney-client privileged or work product protected, the plaintiffs are not entitled to access them. We do not purport to be fact-finders on the initial issue whether specific documents qualify as attorney-client privileged or work product protected. We consider only the consequence of a determination that privileged or protected information exists. Thus, on remand, the judge or discovery master should engage in fact finding to determine whether attorney-client privilege or work product protection applies to the documents at issue.[22] See *Matter of the Reorg. of Elec. Mut. Liab. Ins. Co. Ltd. (Bermuda)*, 425 Mass. 419, 421 (1997) (party asserting attorney-client privilege or work product protection bears burden of showing privilege applies).

[22]Attorney-client privilege applies only to confidential communications made for the purpose of obtaining legal services. See *Purcell* v. *District Attorney for the Suffolk Dist.*, 424 Mass. 109, 115 (1997); Mass. G. Evid. § 502(b) (2012). Work product doctrine only protects documents prepared by a party's representative in anticipation of litigation. See *Commissioner of Revenue* v. *Comcast Corp.*, 453 Mass. 293, 311 (2009); Mass. R. Civ. P. 26 (b) (3), 365 Mass. 772 (1974). The doctrine encompasses two types of work product: fact work product and opinion work product. *Commissioner of Revenue* v. *Comcast Corp.*, *supra* at 314. Fact work product is protected to a lesser extent than opinion work product, and here disclosure may be ordered on the plaintiffs showing before the judge or discovery master on remand that they have a substantial need for the material and cannot obtain a sufficient equivalent by other means. See *Hanover Ins. Co.* v. *Rapo & Jepsen Ins. Servs., Inc.*, 449 Mass. 609, 619 (2007); Mass. R. Civ. P. 26 (b) (3). Opinion work product, in contrast, is generally not open to discovery. See *Commissioner of Revenue* v. *Comcast Corp.*, *supra*, quoting Mass. R. Civ. P. 26 (b) (3) ("the court is to 'protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation' "). The issue of the applicability of attorney-client privilege and work product protection to the requested documents needs to be resolved at a hearing. Moreover, documents that the defendants, in the 2008 settlement agreement, contracted but have yet to provide — including "financial reports" and the documents attached to the settlement agreement as Exhibit "B" — should be removed from the judge's reconsideration on remand of the defendants' and RKMC's motion for protective order. The provision of these documents is governed by private agreement between the parties.

The judge or discovery master should take particular care to distinguish Gold Medal's privileged communications with RKMC regarding the 2007 and the present litigations from the underlying facts of Gold Medal's financial health and status, information that may have been generated irrespective of litigation. This distinction is crucial because attorney-client privilege only protects against disclosure of confidential communications made to render legal services. *Commissioner of Revenue* v. *Comcast Corp.*, 453 Mass. 293, 305 (2009). It does not immunize underlying facts available from another source from discovery just because a client disclosed the facts to an attorney. See M.S. Brodin & M. Avery, Massachusetts Evidence § 5.4.4 (8th ed. 2007 & Supp. 2013), quoting *Upjohn Co.* v. *United States*, 449 U.S. 383, 395-396 (1981) ("A fact is one thing and a communication concerning that fact is an entirely different thing"). The plaintiffs should not be denied access to basic financial information about Gold Medal just because RKMC is keeper of Gold Medal's corporate records.[23]

The judge or discovery master should take particular care not to confuse the limited protections afforded under attorney-client privilege and work product doctrines with the distinct issue of the plaintiff-directors' ability to access the underlying books and records of Gold Medal in their capacity as Gold Medal directors pursuant to G. L. c. 156D, § 16.05.[24] The plaintiffs[25]

---

[23]For example, the plaintiffs' subpoena to RKMC asks for "all corporate records of [Gold Medal]." It also asks for all documents concerning Gold Medal's accountant and its principals. On remand, the judge also should engage in fact finding to determine whether the derivative privilege, available to accountants when retained by an attorney to provide services that enhance legal advice, applies in this case. See *Commissioner of Revenue* v. *Comcast Corp.*, *supra* 306-308, discussing *United States* v. *Kovel*, 296 F.2d 918 (2d Cir. 1961). The derivative privilege only applies where an accountant's presence is necessary for effective communication between attorney and client; it does not apply if what is sought is not legal advice but accounting services, or if the documents were not prepared or obtained because of the prospect of litigation. *Id.* at 306.

[24]General Laws c. 156D, § 16.05 (*a*), provides: "A director of a corporation is entitled to inspect and copy the books, records, and documents of the corporation at any reasonable time to the extent reasonably related to the performance of the director's duties as a director, . . . but not for any other purpose or in any manner that would violate any duty to the corporation."

[25]Because the plaintiff-directors are also Gold Medal shareholders, G. L.

are entitled to inspect the books and records of Gold Medal because doing so is reasonably related to the performance of their fiduciary duties as directors. See 18A Am. Jur. 2d Corporations § 325 (2012) ("Where the right of inspection is not . . . absolute [as in Massachusetts] . . . a director who has a proper purpose may still be entitled to virtually unfettered access to the books and records of the corporation"). Notwithstanding the plaintiffs' interest in determining the value of their shares, the corporation has not established that the plaintiffs are not entitled to such inspection rights.[26] G. L. c. 156D, § 16.05 (*b*). Inability to access legal advice provided to a corporation regarding a directors' own litigation against a company is one thing; inability to access basic corporate information is quite another.[27] A director needs access to information about the company he represents to fulfil fiduciary responsibilities. *Blackstone* v. *Cashman*, 448 Mass. 255, 266, 267 (2007). Thus, the improper purpose that precludes access to corporate books and records must well exceed mere adverse interest that precludes access to privileged or protected information. See generally G. L. c. 156D, § 16.05 (*b*), (*c*). See also 2 Shareholder Litigation § 15:10 (1981 & Supp. 2012).

We now reach the central question whether the plaintiffs are entitled to Gold Medal's attorney-client privileged and other-

c. 156D, § 16.02, governing inspection rights of shareholders also is implicated. However, we focus our analysis of the plaintiffs' ability under § 16.05 (director inspection) to inspect Gold Medal books and records because of a director's particular need for information to fulfil the fiduciary function. See G. L. c. 156D, § 16.05; P.M. Lauriat, S.E. Chesnay, W.H. Gordon, A.A. Rainer, Discovery § 6.5 (2d ed. 2008).

[26]Admittedly, we have greater tolerance for mixed-adverse and nonadverse interests, which we discuss *infra*, in the context of a director's access to corporate books and records than we do in the context of a director's access to the corporation's confidential communications with counsel. General Laws c. 156D, § 16.05 (*c*) — which states "[i]f the court orders inspection and copying of the books, records and documents demanded, it may . . . prohibit[] the director from using information obtained upon exercise of the inspection rights in a manner that would violate a duty to the corporation" — contemplates mixed-motive litigation. It provides the practical tool whereby a judge can ensure that a director uses information obtained on exercise of inspection rights only for proper purposes that comport with the fiduciary function.

[27]A plaintiff-director can retain his own lawyer if he is not entitled to legal advice furnished by corporate counsel. In contrast, there is no substitute for basic information about a company.

wise protected information. We reiterate the touchstone that a director has fiduciary duties to the corporation irrespective of his involvement in day-to-day operations. See G. L. c. 156D, § 8.30; *Blackstone* v. *Cashman, supra* at 267. In addition, as noted, a director cannot satisfy his fiduciary responsibilities without access to basic information about the company he represents. When that information includes legal advice, a director is generally entitled to it. See G. L. c. 156D, § 16.05. See also Moore Business Forms Inc. *vs.* Concordant Holdings Corp., Court of Chancery, Nos. 13911 & 14595 (Del. June 4, 1996); Kirby *vs.* Kirby, Court of Chancery, No. 8604 (Del. July 29, 1987). Thus, to the extent that the plaintiffs' interests are not adverse to Gold Medal, they are within the circle of Gold Medal's privilege.[28]

Furthermore, a corporate director who is not adverse to the corporation is, as a general matter, "entitled to equal access to legal advice furnished to other board members."[29] SBC Interactive Inc. *vs.* Corporate Media Partners, Court of Chancery, No. 15987 (Del. Dec. 9, 1997) (*SBC Interactive*). The principle that directors have equal access to legal advice rendered to the corporation stems from their joint responsibility for the management of the corporation. Kirby *vs.* Kirby, *supra.* See Moore Business Forms, Inc. *vs.* Coordant Holdings Corp., *supra*; *Inter-Fluve* v. *Montana Eighteenth Judicial Dist. Court*, 327 Mont. 14, 21 (2005) ("all of a corporation's directors, not just a select or privileged group thereof, are entitled to advice of corporate counsel"). There is also a need to prevent the strategic use of attorney-client privilege and other protections to hinder a codirector's access to the legal advice, particularly in the close corporation context where shareholders owe fiduciary duties to each other as well as to the corporation, and the minority may be particularly vulnerable to freezeout. See *Donahue* v. *Rodd*

---

[28]We reject the defendants' premise that the issue raised here is whether the plaintiffs have the power, not to mention the votes, to waive the attorney-client privilege on Gold Medal's behalf. *Commodity Futures Trading Comm'n* v. *Weintraub*, 471 U.S. 343, 348 (1985) (corporate managers waive privilege). The attorney-client privilege is not "waived" when a person within the group entitled to information simply accesses it.

[29]To the extent that directors are entitled to access communications, they may access communications that occurred prior to the time they became directors. *Commodity Futures Trading Comm'n* v. *Weintraub, supra* at 349.

*Electrotype Co. of New England, Inc.,* 367 Mass. 578, 588 (1975).

Although directors normally are entitled to access legal advice furnished to a corporate board to the same extent as other board members, this general proposition is not a per se guarantee. See *SBC Interactive, supra.* See also Intrieri *vs.* Avatex, Court of Chancery, No. 16335-NC (Del. June 12, 1998). The principle that directors have a right of equal access to advice of corporate counsel provided to the corporation is based on the assumption that the interests of the directors are not adverse to the interests of the corporation on a given issue. *SBC Interactive, supra.* The corporation "is entitled to . . . receive legal advice in confidence and without having to share that advice with the director whose interests are adverse." *Id.*

The idea that a director whose interests are adverse to those of a corporation on a given issue is not automatically entitled to access a corporation's confidential communications with counsel furthers the policy rationale underlying the attorney-client privilege: it promotes candid communications between attorneys and organizational clients. See *Upjohn Co.* v. *United States,* 449 U.S. 383, 389-390 (1981). It guards against the unfair disadvantage that would result if a director with adverse interests, and who seeks to vindicate those interests against a corporation, could access the corporation's confidential communications with counsel. It also comports with the notion of fiduciary responsibility. A director advancing interests shared with the corporation should be entitled to the associated privilege of access to legal advice furnished to a corporation. A director motivated by adverse interests is not so entitled.[30] *Lane* v. *Sharp Packaging Sys., Inc.,* 251 Wis. 2d 68, 94 (2002).

We stress that no one factor or combination of factors is dis-

---

[30]A director influenced by self-interest is not necessarily disloyal to the corporation. See G. L. c. 156D, § 8.31 (*a*) (directors' conflict of interest transaction is not necessarily voidable); G. L. c. 156D, § 16.05 (*c*) (authorizing court to limit director's use of corporate records so as to avoid violating fiduciary obligation). Human beings are fallible and are not expected to abandon self-interest completely. Our conclusion that the plaintiffs are not entitled to privileged communications in the limited context of their own litigation against the company in no way suggests impropriety. It is simply an effort to safeguard an organizational client's ability to speak privately with counsel.

positive in determining when a director has interests adverse for attorney-client privilege purposes, particularly in the unique context of a close corporation.[31] The analysis "is fact specific and necessarily depends upon the circumstances of each case." *SBC Interactive, supra.* See P. Sigwarth, It's My Privilege and I'll Assert It If I Want To: The Attorney-Client Privilege in Closely-Held Corporations, 23 J. Corp. L. 345, 369 (Winter 1998).

Here, there is sufficient evidence, at least narrowly with respect to the 2007 and the present litigations, that the plaintiffs' interests are adverse to Gold Medal. Of great significance is the nature and frequency of suit by the plaintiffs against Gold Medal. The plaintiffs have brought multiple suits directly against Gold Medal in a short span of several years and have been represented by their own counsel throughout this period. That the plaintiffs' interests are adverse to those of Gold Medal is further evinced by the plaintiffs' self-interested motive in pursuing both the 2007 and present litigations. See *Milroy* v. *Hanson,* 875 F. Supp. 646, 652 (D. Neb. 1995); *Lane* v. *Sharp Packaging Sys., Inc., supra.* By the terms of their own pleadings, the plaintiffs have been pursuing a global buyout of their Gold Medal shares since approximately late 2006. They brought a direct suit solely against Gold Medal in 2007 for the inspection of corporate records to then use to value their Gold Medal shares. The settlement agreement that ended the 2007 litigation provided for an audit of Gold Medal "for the purpose of facilitating a sale of the [p]laintiffs' shares to [Gold Medal] and/or [Gold Medal's] other shareholders." The plaintiffs are interested in maximizing the price in the sale of their stock consistent with their fiduciary obligations as directors and shareholders of a close corporation to the corporation and other shareholders. See *Donahue* v. *Rodd*

---

[31]The fact that a director-shareholder brings a derivative action against co-directors does not necessarily signal mutuality of interest with the corporation. *Milroy* v. *Hanson,* 875 F. Supp. 646, 652 (D. Neb. 1995). Although a derivative plaintiff stands in the shoes of a corporation and ostensibly seeks to vindicate the corporation's interests, G. L. c. 156D, §§ 7.40-7.47, it would be naive to assume that a plaintiff is motivated only by the interests of the corporation. The reality of complex cases in which plaintiffs in the dual role of director-shareholder assert multiple direct and derivative claims is that such efforts often arise out of a mix of interests, some of which may be adverse to interests of the corporation.

*Electrotype Co. of New England, Inc., supra* at 598. Gold Medal, as a potential buyer, is interested in minimizing the stock price, consistent with its contractual duty of good faith pursuant to the 2008 settlement agreement described earlier. Thus, the interests of the plaintiffs and Gold Medal are adverse.

The present litigation, which included direct claims against Gold Medal, similarly arose in part out of an inability to obtain requisite information to conduct a valuation of Gold Medal for the plaintiffs to then use to obtain a value-maximizing sale of their shares, albeit consistent with their fiduciary duties. As evidence of the plaintiffs' adverse interests, the judge who ruled on a separate motion filed by the plaintiffs determined that the "ultimate goal of the litigation" was "valuation of the corporations so that various family members can obtain their due." Thus, a significant motivating factor in the present lawsuit, as in the 2007 lawsuit, is the sale of the plaintiffs' Gold Medal shares at the highest possible price. See generally *Milroy* v. *Hanson, supra*; *SBC Interactive, supra*. This interest is adverse to Gold Medal. To permit the plaintiffs to access attorney-client privileged and otherwise protected material as concerns the 2007 and present litigations would give the plaintiffs an unfair litigation advantage.

Admittedly, the present lawsuit poses a greater challenge because it includes intimately interconnected direct and derivative claims for access to corporate records and alleged breach of fiduciary duties by the individual defendants.[32] As such, it is

---

[32]At oral argument, counsel for the plaintiffs stated that the plaintiffs sought litigation documents only from the 2007 litigation and not litigation documents prepared pursuant to the present lawsuit in which Gold Medal retained separate litigation counsel. First, this alleged limit is not apparent on the face of the plaintiffs' broadly worded subpoena, which asks for "all documents concerning any of the [p]laintiffs in the . . . captioned matter," where the captioned matter is unquestionably the present litigation, as well as "all documents memorializing any communications, including without limitation, electronic communications between [RKMC and Gold Medal]." Second, the claim of the plaintiffs' interest in litigation documents solely from 2007 is contradicted by a letter the plaintiffs wrote to the discovery master in 2009. In the letter, the plaintiffs expressly state that they "seek all documents with respect to the present litigation." Therefore, to the extent that the discovery master's production order implicates privileged communications between

likely the product of the plaintiffs' mixed-interests, only some of which are adverse to the corporation. However, given the context of the plaintiffs' overall efforts to obtain a buyout of their Gold Medal stock and the impracticability of parsing legal advice in response to mixed-motive litigation, we conclude that the plaintiffs' interests in the present lawsuit are sufficiently adverse to those of Gold Medal to preclude their access to attorney-client privileged litigation documents.

2. The defendants also ask that we review the lower court's determination that the plaintiffs are entitled to the requested documents because of their status as shareholders, separate and apart from their status as directors. To this end, the defendants ask that we pass judgment on the lower court's application of *Garner* v. *Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), to this case. We need not. We determined that the plaintiffs are not entitled to privileged information because their interests are adverse to the corporation. See *Symmons* v. *O'Keefe*, 419 Mass. 288, 298-299 n.10 (1995). Their status as shareholders does not change our disposition.

*Conclusion.* Because the plaintiffs' interests are adverse to those of Gold Medal, the order compelling discovery is vacated to the extent it requires production of the attorney-client privileged or work product protected material related to the 2007 and present litigations. The case is remanded for proceedings consistent with this opinion so the lower court can parse the plaintiffs' broad production demands[33] more finely to prevent them from obtaining discovery of confidential communications or work product created in anticipation or actual defense of the claims the plaintiffs themselves asserted against Gold Medal.[34]

The order for the production of documents is vacated, and the

Gold Medal and RKMC concerning the present litigation, we consider whether the plaintiffs' interests are adverse to Gold Medal's.

[33]We note, in particular, the broadly worded language in the plaintiffs' subpoena. See note 32, *supra.*

[34]We agree with the defendants, for example, that the plaintiffs should be precluded from discovering attorney opinion on the strengths and weaknesses of Gold Medal's position in the 2007 litigation, attorney mental impressions of potential witnesses in that litigation, and attorney advice regarding Gold Medal's litigation strategies.

case is remanded for further proceedings consistent with this opinion.

*So ordered.*