Billings, Thomas P., J.
For the reasons that follow, Defendants’ Motion to Provide Confidential Witness Documents and to Respond Fully to Morgan Stanley & Co. LLC’s Third Set of Interrogatories is DENIED.
A. Investigators’ Memoranda of Witness Interviews
The plaintiff (“Cambridge Place”), as assignee of nine affiliated investment funds which it advised, brought these consolidated cases. It alleges that residential mortgage backed securities (“RMBS”) which it purchased on the affiliates’ behalf from the remaining defendants and others[1] were sold in violation of the Massachusetts Uniform Securities Act. Cambridge Place is represented by the firm of Bernstein, Litowitz, Berger & Grossman, LLP (“BLBG”), which specializes in securities cases for plaintiffs. BLBG also represents clients in seven other RMBS cases nationwide, all but one of which predate the first of these cases.
A privilege log provided by the plaintiff in response to document requests from the defendants identified 86 memoranda which Cambridge Place and BLBG assert are entitled to work product protection. Declaration of Edmund Polubinski (12/17/13), Ex. Z. Each was prepared either by an investigator employed by BLBG or, in some cases, an independent investigator whom the firm retained for the purpose. All of the memos summarize interviews of witnesses conducted in anticipation of, or during, RMBS litigation for clients which had retained BLBG. The witnesses were employees and former employees of entities which originated residential mortgage loans, performed due diligence with respect to such loans, or assembled, underwrote, and/or sold RMBS.
Fourteen of the interviews occurred in the period in which BLBG has represented Cambridge Place, and twelve were conducted for the purpose of preparing the complaints filed in these cases. The remainder were prepared in connection with other RMBS cases, in which BLBG represented other plaintiffs. BLBG used the information thus gleaned in drafting the Cambridge Place complaint, and has provided the interviewees’ names and last-known contact information to the defense, but does not intend to call any of them at trial.[2]
Mass.R.Civ.P. 26(b)(3) provides, in pertinent part, as follows:
Subject to the provisions of subdivision (b) (4) of this rule, a parly may obtain discoveiy of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discoveiy of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
(Emphasis supplied.)
The language of the Rule was “taken verbatim from Federal Rule 26(b)(3), as amended” through 1970. Mass.R.Civ.P. 26, Reporter’s Notes — 1973.[3]
Like its federal counterpart, Massachusetts Rule 26(b)(3) is intended to codify — at least in substantial part; see infra — the protection for attorney work product recognized in Hickman v. Taylor, 329 U.S. 495 (1947). As with most evidentiary privileges, the work product doctrine exists so that a socially desirable behavior — in this instance, an attorney’s creation and retention of suitably comprehensive case files so as to better represent a client — will not be deterred by the fear of disclosure to an adverse party.
Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney’s thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.
Hickman, 329 U.S. at 511.
The issue presented is whether a document, prepared by or for an attorney representing a client in litigation, is protected from discoveiy in a later case in which the same attorney represents a different client. Nothing in the language of the Rule suggests a “same case” requirement, and the SJC and other courts have held that there is none. McCarthy v. Slade Assocs., Inc., 463 Mass. 181, 198 n.37 (2012) (“[t]hat opinion work product relates to a different case does not mean that it no longer qualifies as work product”), and cases cited.
Whether or not the Rule imposes a “same client” (or “same party”) requirement is a closer question. The plaintiff argues that it does not, because the Rule limits a party’s ability to obtain otherwise discoverable materials if they were “prepared in anticipation of litigation or for trial by or for another party or by or for that other party’s representative (including his attorney . . .”) (emphasis supplied), without requiring a showing that the attorney represented the present party when the materials were prepared. At first glance, this seems a plausible interpretation, particularly inasmuch as “the lawyer holds the work product privilege,” *3 and may assert it “to the extent that his interests may be affected.” McMillan v. Westport Ins. Corp., 2004 WL 3220112 (Mass.Super. 2004; Botsford, J.) [19 Mass. L. Rptr. 55] at *2 & n.3, citing In re Grand Jury Proceedings, 604 F.2d 798, 801-02 (3d Cir.1979).
It is not, however, an interpretation which has gained much traction in the caselaw or among commentators. See, e.g., FTC v. Grolier, Inc., 462 U.S. 19, 25 (1983) (“the literal language of [Fed.R.Civ.P. 26(b)(3)] protects materials prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation”); 8 C. Wright & A. Miller, Federal Practice & Procedure, ‘2024 at 523 (3d Ed. 2010) (“Wright & Miller”) & cases cited at n.49 (“under the rule the protection extends only to documents obtained by ‘another party’ or its representative and in context this rather clearly means another party to the litigation in which discovery is being attempted. Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit”); J. Smith & H. Zobel, Rules Practice, 6 Mass. Practice Series §26.5 at 397 (Second Ed. 2006) (“[t]he test is simply: At the time the item was prepared, was the person preparing it acting on behalf of the person who later became a party to the present action?”).
As the Wright & Miller treatise recognized, this is a “problem” where, for example,
A and B are bringing independent antitrust actions against the same defendant based on the same charges. Documents that A has prepared in anticipation of the litigation would be within the qualified immunity in his own suit but would be freely discoverable by defendant on a subpoena duces tecum issued in connection with the suit brought by B. Such a result would, be intolerable.
Wright & Miller, §2024 at 523-24 (emphasis supplied).
We live in the era of “mass tort” and other serial, multi-plaintiff litigation. A specialty law firm may represent many clients pursuing closely related claims against the same defendant or defendant group, but in separate actions, in the same or multiple jurisdictions. The investigative materials from the first case may have continuing utility in the tenth, or the hundredth. The first case may even still be pending when counsel for the same defendant seeks, in a later case, to discover the fruits of the original investigation, in hope of capitalizing “on wits borrowed from the adversary.” Hickman, 329 U.S. at 516 (Jackson, J., concurring).
This is, of course, precisely that later case. The logic of Hickman is no less applicable here than it would be had the witness statements in question been taken for this case alone, or had it been feasible for all of BLBG’s RMBS clients to assert their claims in a single action; yet in this case, Rule 26(b)(3) does not seem to provide relief.
Although no Massachusetts court,, to my knowledge, has addressed the issue, it has been said that Federal Rule 26(b)(3) “only partially codifies the work product doctrine announced in Hickman,” and so does not “provide! ] an exhaustive definition of what constitutes work product.” United States v. Deloitte LLP, 610 F.3d 129, 136 (D.C.Cir. 2010), and cases cited. On the question of work product protection for documents originally prepared for a non-parly to the instant action, therefore,
the courts need not be confined by a literal reading of Rule 26(b)(3) and can continue to arrive at sensible decisions on this narrow point. To the extent that Rule 26(b)(3), literally read, seems to give insufficient protection to material prepared in connection with some other litigation, the court can vindicate the purposes of the work-product rule by the issuance of a protective order under Rule 26(c). In this connection, it must be remembered that protection may exist under Hickman v. Taylor itself, even if it is not provided also under the rule, so long as the materials in question were prepared in anticipation of litigation by an attorney.
Wright & Miller, §2024 at 525-26 (footnote omitted);[4] accord, Anderson et al., ‘The Work Product Doctrine,” 68 Cornell L.Rev. 760, 862-64 (1983).[5]
This reasoning seems equally sound as a matter of Massachusetts law, and I adopt it. Therefore, because the investigators’ memos of witness interviews at issue here were prepared for BLBG, in anticipation of this case or for cases closely related to it both factually and legally, and because discoveiy of the memos would be inimical to the interests that Hickman and the many cases following it have sought to protect, they are protected work product.
It is unnecessary at this juncture to determine whether the memos constitute “fact” or “opinion” work product or a mixture of both.[6] The defendants have made no particularized showing that they have “substantial need” of the memoranda, or that they would be “unable without undue hardship to obtain the substantial equivalent of the materials by other means.” Mass.R.Civ.P. 26(b)(3). Although the witnesses’ names and last-known contact information have already been provided to the defendants, they apparently have not attempted to find and interview any of them. And while some of the witness statements were quoted in the Complaint and assisted in repelling a Rule 12(b)(6) motion to dismiss, that chapter of the litigation is long over, and the disclosure of selected snippets was not a waiver as to the whole. Finally, Cambridge Place represents that it has no plans to call any of the interviewees as trial witnesses.[7] The motion is therefore DENIED insofar as it pertains to the investigators’ memos.
*4 B. Investor Identities and Ownership Information
On September 23, 2013 defendant Morgan Stanley propounded an interrogatory to Cambridge Place, seeking the identities of the persons or entities which, for each of the nine client funds, had the largest investments and comprised at least 90% of investments as a whole, as of the end of each year 2004 through 2009 and on July 9, 2010 (the date the first of these actions was filed). Cambridge Place objected to the interrogatory as seeking information that was irrelevant; not in its possession, custody or control and/or nonexistent; and unduly burdensome to assemble and provide.
Morgan Stanley responds that the requested information will enable it to propound third-parly subpoenas to the investors, aimed at determining how much Cambridge Place and the client funds knew about the matters they now say the defendants failed to disclose. The defendants have already taken the direct route by way of exhaustive Rule 34 requests, and are in the process of taking depositions of Cambridge Place and client fund personnel, aimed at this very question. They say they have been frustrated, however, in that Cambridge Place had, for some period of time at least,[8] an “Electronic Mail and Internet Usage Policy” under which emails not archived by a user were automatically purged after 90 days. Hence, they argue, the need to take third-party discovery from the investors.
The additional discovery now sought offers only a minimal likelihood of uncovering relevant information not already provided to the defendants. Cambridge Place has already produced over two million pages of documents in discovery, “including internal analyses of the RMBS at issue and other internal documents that pertain to its knowledge about these RMBS, as well as tens of thousands of documents reflecting communications between CPIM [Cambridge Place], on the one hand, and the Clients and Clients’ investors, on the other hand.” Declaration of David Stickney (1 /3/04), ¶20.[9] Its email retention policy is a commonplace means of conserving server space. Users were instructed:
CPIM information that documents or supports CPIM business-related transactions must not be stored on an e-mail system.
Such messages are to be immediately removed (for example, detached) from the user’s account and stored as either electronic or printed business files. (Polubinski Declaration, Ex. B, p. 3.)
There is little reason to suppose that the investors will have retained copies of communications — now up to ten years old — that Cambridge Place did not keep. The prospect of opening a whole new front of third-parly electronic discovery for so little likely return is not an attractive one, even apart from the potential burden on third parties not presently before the Court. Morgan Stanley’s motion to compel a further answer to the interrogatory in question is therefore DENIED.
ORDER
For the foregoing reasons, Defendants’ Motion to Provide Confidential Witness Documents and to Respond Fully to Morgan Stanley & Co. LLC’s Third Set of Interrogatories is DENIED, in its entirety.

The claims against most defendants, which included sellers, underwriters, and “depositors” (firms which aggregated mortgage loans into pools for securitization), have been resolved. The remaining defendants are Morgan Stanley & Co. LLC, Credit Suisse Securities (USA) LLC, and Barclays Capital Inc.

Cambridge Place and BLBG have the burden of establishing their entitlement to work product protection. Matter of the Reorg. of Elec. Mut. Liab. Ins. Co. Ltd. (Bermuda), 425 Mass. 419, 421 (1997). These facts come from an affidavit of David Stickney, a BLBG partner and lead counsel for the plaintiffs in these cases, and do not appear to be in dispute.

Federal Rule 26(b)(3) was amended in 2007 “as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.” Committee Notes, 2007 Amendment.

Citing In re California Public Utilities Com’n, 892 F.2d 778, 781 n.2 (9th Cir. 1989); Castle v. Sangamo Weston, Inc., 744 F.2d 1464 (11th Cir. 1984); In re Polypropylene Carpet Antitrust Litigation, 181 F.R.D. 680 (N.D. Ga. 1998); Genevit Creations v. Underwriters at Lloyd’s, 166 F.R.D. 281 (E.D.N.Y. 1996).

Citing United States v. AT&T, 642 F.2d 1285, 1291 (D.C.Cir. 1980); Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 557 (2d Cir. 1967); Stix Prods., Inc. v. United Merchants & Mfrs., Inc., 47 F.R.D. 334, 337-38 (S.D.N.Y. 1969).

An attorney’s own memoranda, including witness statements, are “opinion” work product because they provide a direct window into the attorney’s mental impressions and strategy. Hickman, 329 U.S. at 510; see Commissioner of Revenue v. Comcast Corp., 453 Mass. 293, 315 (2009) (“interview memoranda ‘will be discoverable only in a “rare situation” ’ ”} (citation omitted); see Chambers v. Gold Medal Bakery, Inc., 464 Mass. 383, 391 n.22 (2013) (“[o]pinionwork product, in contrast [to fact work product], is generally not open to discovery”).
Witness statements taken by an investigator may be thought less directly revealing of what the attorney was thinking. Investigators are tasked by attorneys, however, such that even the investigator’s memos may contain opinion work product of the attorney, so as to be non-discoverable “except in extremely unusual circumstances.” Id., quoting Reporters’ Notes to Mass.R.Civ.P. 26(b)(3). At least one colleague has held that in such a case, the memoranda may be discoverable upon a showing of substantial need and undue hardship, with redaction to the extent necessary to protect against disclosure of the attorney’s mental impressions. Abramian v. President and Fellows of Harvard College, 2001 WL 1771985 (Mass.Super. 2001; Lauriat, J.).

This fact alone materially distinguishes this case from Abramian, cited in the preceding footnote.

The policy is dated January 20, 2006. Cambridge Place has represented in the past that at some point in 2009 or 2010 (I do not recall which), when it was apparent that it would be pursuing the claims asserted in these cases, it stopped deleting emails.

Cambridge Place has also disclosed, incidentally to previous discovery, the identities of at least 160 of the client fund *5 investors, though not in the format requested. Interestingly, these investors include many of the defendants or their affiliates, to which the defendants presumably have ready access. Stickney Declaration, ¶¶23-24 & Ex. 3-19.