ERASMIA CACCIOLA, executrix,[1] *vs.* HOWARD NELLHAUS.

No. 97-P-448.

Middlesex. September 8, 1999. - July 31, 2000.

Present: JACOBS, DREBEN, & BECK, JJ.

*Practice, Civil,* Complaint, Dismissal. *Attorney at Law,* Malpractice, Attorney-client relationship, Fiduciary duty. *Partnership,* Fiduciary duty. *Contract,* Interference with contractual relations. *Consumer Protection Act,* Availability of remedy.

This court concluded that a claim for legal malpractice, which alleged that the attorney had a fiduciary duty to the four partners in the partnership he undertook to represent and that the attorney aided and abetted one partner in his breach of fiduciary duty to another partner, was properly read to assert a claim for breach of fiduciary duty and should not have been dismissed on a motion under Mass.R.Civ.P. 12(b)(6). [750-754]

A claim for interference with a contractual relationship could not be maintained on behalf of a partnership where not all the partners were parties to the action. [754]

Allegations in a claim for interference with a contractual relationship brought by a partner against the partnership's attorney were sufficient to withstand a motion to dismiss. [755]

A G. L. c. 93A claim on behalf of an individual partner against the partnership's attorney was properly dismissed where the conduct alleged was an internal business dispute and not the conduct of any trade or commerce. [756]

CIVIL ACTION commenced in the Superior Court Department on June 26, 1996.

The case was heard by *Julian T. Houston,* J., on a motion to dismiss.

*Ieuan G. Mahony* for the plaintiff.

*George A. Berman* (*Susan Reidel* with him) for the defendant.

BECK, J. The plaintiff is the widow of Salvatore J. Cacciola, one of four brothers who were partners in a real estate invest-

---

[1] Of the estate of Salvatore J. Cacciola.

ment business. She is also the executrix of her late husband's estate. The defendant is the lawyer who represented the partnership. The plaintiff filed suit against the defendant after learning that he had also represented one of the other brothers, Edward, in Edward's purchase of the partnership share of another brother, Anthony, who had died. The complaint was in three counts: legal malpractice (count one); interference with contractual relationship (count two); and violation of G. L. c. 93A (count three). A Superior Court judge dismissed the complaint pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), on the ground that there was no attorney-client relationship between Salvatore and the defendant and that Salvatore had no standing to sue on behalf of the partnership. We conclude that it was too early in the proceedings to dispense with the plaintiff's complaint.

1. *Factual background.* "[A]ccept[ing] the allegations set out in the amended complaint as true," *Wolf* v. *Prudential-Bache Sec., Inc.,* 41 Mass. App. Ct. 474, 475 (1996), citing *Nader* v. *Citron,* 372 Mass. 96, 98 (1977), the facts are as follows. During his lifetime, Antonio Cacciola acquired considerable residential and commercial real estate. On January 1, 1985, as part of his estate plan, he set up a partnership called Cacciola Associates (partnership). As established, the partnership, to which he conveyed his real estate interests, had five partners: Antonio and his four sons, Edward, David, Anthony, and Salvatore. Two years later, the father died. His four sons assumed responsibility for the partnership. Each then held a twenty-five per cent interest. Anthony died in January, 1988, eight months after his father.

The partnership agreement provided that, if a partner died, the surviving partners could continue the partnership. The agreement also set out the procedure for the partnership to purchase the partnership share of a deceased partner. Each partner had equal authority in the management of the partnership, and all decisions affecting the conduct of partnership affairs were to be made by majority vote. Edward and Anthony were in charge of the daily management of the partnership, for which they each received compensation of two and one-half per cent of the gross income of the partnership. They did not have authority over matters requiring the agreement of the partners.

Howard Nellhaus, the defendant, served as legal counsel to the partnership from 1985 until at least 1995. Following Anthony's death, the defendant advised the three remaining

partners to execute a document entitled "Exercise of Option to Continue Partnership." The document provided that Anthony's estate would become successor-in-interest to Anthony's partnership interest. The surviving partners discussed having Anthony's son, Anthony, Jr., succeed his father as a full partner if that were feasible or arranging for the partnership to purchase Anthony's share from his heirs. No action was taken on either of these alternatives.

In March of 1992, Edward, Salvatore, and Salvatore's son and daughter met at the partnership office. Edward reported that Anthony's heirs appeared ready to sell their share of the partnership. He said the partnership "might be able to 'pick up' those interests for an amount as low as $250,000, which . . . Edward . . . thought would be a very favorable figure." Salvatore responded that the partnership should acquire Anthony's share, but emphasized that the partnership should pay a fair and equitable price to Anthony's heirs. Edward said nothing further to Salvatore on this subject.

In August, 1993, Salvatore received a financial statement from the partnership's accountant showing Edward with a fifty per cent interest in the partnership. It was then Salvatore learned that, two months before, Edward had purchased Anthony's share from Anthony's heirs. The purchase price was $300,000, which was substantially less than the fair market value of Anthony's share of the partnership and its assets. Edward had falsely represented to Anthony's heirs that Salvatore was not interested in buying Anthony's share, and secretly had purchased Anthony's share of the partnership for his own personal benefit. Anthony's heirs testified (the complaint does not indicate the occasion of the testimony) that, had they known that Salvatore was interested, they would have included him in the sale.

Several months after learning of Edward's purchase, Salvatore discovered that the defendant had served as Edward's lawyer in the transaction. The defendant had advised Edward that Edward had the "right and authority" under the partnership agreement to purchase Anthony's share without notice to Salvatore. When Salvatore sought information about the transaction, the defendant refused to provide any details, claiming the information was confidential and that as an attorney he could not disclose it.

2. *Prior proceedings.* Salvatore filed an action against Edward in January, 1994. In July, 1995, Salvatore died. In June, 1996,

Salvatore's wife, Erasmia (plaintiff), filed this action in her role as executrix claiming that the defendant, "in representing and protecting the interests of Edward and withholding key information from Salvatore, while purportedly acting as counsel for the partnership, violated the obligations he had as counsel to Salvatore, a partner in the partnership." The complaint, after amendment, alleged malpractice, interference with a valuable opportunity of the partnership, and violation of G. L. c. 93A. The defendant filed a motion to dismiss the complaint on the ground that, as attorney for the partnership, he owed no enforceable duty to Salvatore; that Salvatore lacked standing to bring an action for damages to the partnership; and that the G. L. c. 93A claim fell with the failure of the malpractice claim. Mass.R. Civ.P. 12(b)(6).

A Superior Court judge allowed the defendant's motion to dismiss the malpractice and c. 93A counts on the ground that there was no attorney-client relationship between Salvatore and the defendant. The judge ruled that, "although [the defendant] may have breached a fiduciary duty owed to Salvatore as an attorney representing the partnership, [the plaintiff] cannot allege facts which would establish a positive attorney-client relationship."

The judge dismissed the interference count on the ground that the claim of damage belonged to the partnership and that therefore Savatore lacked standing to bring that action as an individual. The judge also concluded that the defendant did not know of Salvatore's interest in buying Anthony's share of the partnership, and therefore could not have intentionally interfered with Salvatore's contractual opportunity.

3. *Discussion.* a. *Standard of review.* "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. at 98, quoting from *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). "[A] complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate." *Nader* v. *Citron, supra* at 104, and cases cited. Thus, we "assess the [allowance] of the motion to dismiss by referring to whatever legal theory might support [the plaintiff's claim]." *Ibid.* In making that determination, all allegations in

the complaint, and the inferences in favor of the plaintiff to be drawn from them, are to be taken as true. *Id.* at 98.

b. *Legal malpractice and breach of fiduciary duty.* In order to prove a claim of legal malpractice, the plaintiff must show that the defendant owed him a duty of care arising from an attorney-client relationship. See *Spinner* v. *Nutt*, 417 Mass. 549, 552 (1994), citing 1 Mallen & Smith, Legal Malpractice § 8.1 (3d ed. 1989). There was no error in the judge's ruling that the complaint failed to allege facts to establish an express attorney-client relationship between Salvatore and the defendant. See *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 522, cert. denied, 493 U.S. 894 (1989). Compare cases in other jurisdictions recognizing the possibility that counsel for a partnership may also represent individual partners. See, e.g., *Johnson* v. *Superior Ct.*, 38 Cal. App. 4th 463, 476-477 (1995) (setting out factors, including size of partnership); *Rice* v. *Strunk*, 670 N.E.2d 1280, 1286-1287 (Ind. 1996) (discussing aggregate versus entity theory of partnership); *Arpadi* v. *First MSP Corp.*, 68 Ohio St. 3d 453, 456-458 (1994) (aggregate theory); *Security Bank* v. *Klicker*, 142 Wisc. 2d 289 (Ct. App. 1987) (aggregate theory). Cf. *Community Feed Stores, Inc.* v. *Director of the Div. of Employment Security*, 391 Mass. 488, 490-491 (1984). Nor does the plaintiff allege that Salvatore relied on the defendant's legal advice, creating an implied relationship. See *DeVaux* v. *American Home Assur. Co.*, 387 Mass. 814, 818 (1983).

However, as the judge observed, the Supreme Judicial Court has recognized (in dictum) that "an attorney for a partnership owes a fiduciary duty to each partner." *Schaeffer* v. *Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C.*, 405 Mass. 506, 513 (1989). In extending that principle to close corporations, the *Schaeffer* court cited *Fassihi* v. *Sommers, Schwartz, Silver, Schwartz & Tyler, P.C.*, 107 Mich. App. 509 (1981). *Schaeffer, supra* at 513. *Fassihi* held that, even in the absence of an attorney-client relationship, a shareholder in a closely held corporation may have a cause of action for breach of fiduciary duty against the lawyer for the corporation. *Fassihi, supra* at 514-517.

(The defendant argues in a single sentence that the plaintiff waived any argument based on *Schaeffer* because she failed to cite that case below. The idea that the defendant, as lawyer for the partnership, owed a duty to the partners severally and col-

lectively was implicit in the complaint. Moreover, the judge referred to *Schaeffer* in his decision. We thus consider the issue adequately preserved. See *M.H. Gordon & Son* v. *Alcohol Bevs. Control Commn.*, 386 Mass. 64, 67-68 [1982]).

As was the case in *Schaeffer*, *Fassihi* involved two fifty per cent shareholders in a closely held corporation. The defendant law firm represented the corporation and "was responsible for drafting all the agreements pertaining to membership in the professional corporation." *Fassihi, supra* at 513. When the other shareholder, Rudolfo Lopez, "decided that he no longer desired to be associated with [Fassihi]," Lopez requested the defendant law firm to "ascertain how [Fassihi] could be ousted from [the corporation]." *Id.* at 512. The defendant arranged for Fassihi's termination at a meeting of the board of directors allegedly attended by Lopez and the business manager of the corporation. *Id.* at 513 & n.2.

Fassihi's complaint for damages against the law firm included counts for breach of the attorney-client relationship and breach of fiduciary duty. Although the court concluded that there was no attorney-client relationship between Fassihi and the defendant, it identified a fiduciary relationship applicable to the facts of the case. Fassihi "assert[ed] that he reposed in defendant his trust and confidence and believed that, as a 50% shareholder [of the closely held corporation, the] defendant would treat him with the same degree of loyalty and impartiality extended to the other shareholder." *Id.* at 515. He claimed the defendant lawyer betrayed him by failing to disclose the "defendant's dual representation of the corporate entity and [the other shareholder] personally" and that the "defendant actively participated . . . in terminating plaintiff's association with the corporation and using [a contract between Lopez and a hospital to Fassihi's] detriment." *Ibid.* The Michigan Court of Appeals held that, "[b]ased upon the pleadings, we cannot say that plaintiff's claim is clearly unenforceable as a matter of law." *Ibid.*

The court identified a fiduciary relationship between the defendant and Fassihi, and observed that "[i]nstances in which the corporation attorneys stand in a fiduciary relationship to individual shareholders are obviously more likely to arise where the number of shareholders is small. In such [circumstances] . . . the corporate attorneys, because of their close interaction with a shareholder or shareholders, simply stand in confidential relationships in respect to both the corporation and individual

shareholders." *Id.* at 516. See *Donahue* v. *Rodd Electrotype Co. of New England,* 367 Mass. 578, 586 (1975) ("close corporation bears [a] striking resemblance to a partnership"). See also Bromberg & Ribstein, Partnership § 1.03(b) (Supp. 1999) (contrasting two- or three-person partnership informally run by partners with large law or accounting firm).

The allegations set forth in the plaintiff's complaint resemble those at issue in *Fassihi.* Salvatore, as an equal twenty-five per cent partner, alleged that "[a]lthough the defendant . . . , as counsel to the partnership, had obligations to Salvatore, as one of the partners . . . to keep Salvatore informed as to significant transactions affecting the partnership, nevertheless, [the] defendant . . . did not inform Salvatore about Edward's negotiations and his subsequent purchase of Anthony's former interest . . . ." Moreover, the defendant "refused to provide Salvatore with any details of the purchase by Edward," claiming his role in Edward's purchase was protected by the attorney-client privilege.

In *Fassihi,* which the Supreme Judicial Court described as "well-reasoned" in *Schaeffer,* 405 Mass. at 513, the plaintiff's complaint was sufficient to withstand a motion to dismiss. Similarly, the defendant in the case before us may have owed a fiduciary duty to Salvatore. Such a duty is not foreign to this jurisdiction. See *Matter of Discipline of Two Attorneys,* 421 Mass. 619, 626-627 (1996) (considering attorney's fiduciary duty as escrow holder to nonclient). Compare *Wortham & Van Liew* v. *Superior Ct.,* 188 Cal. App. 3d 927, 931-932 (1987) (in case concerning deposition of partnership's lawyer, attorney for partnership represents all partners as to matters of partnership business and has fiduciary duty to disclose to them all matters concerning partnership).

Indeed the defendant may also be liable for aiding and abetting Edward's breach of his fiduciary duty to Salvatore. As his partner, Edward owed Salvatore a duty of "utmost good faith and loyalty," *Donahue* v. *Rodd Electrotype Co. of New England,* 367 Mass. at 593, quoting from *Cardullo* v. *Landau,* 329 Mass. 5, 8 (1952), the more so because of the familial relationship. 367 Mass. at 596, citing *Samia* v. *Central Oil Co. of Worcester,* 339 Mass. 101, 112 (1959). "[L]iability arises when a person [actively] participates in a fiduciary's breach of duty . . . such th[a]t [he] . . . could not reasonably be held to have acted in good fa[ith]." *Spinner* v. *Nutt,* 417 Mass. at 556 (citation omitted).

Compare *Kurker* v. *Hill*, 44 Mass. App. Ct. 184, 189-190 (1998) (discussing Restatement [Second] of Torts § 876[b] [1977] and claim of civil conspiracy in context of rule 12[b][6] motion). Here, the plaintiff alleges that the defendant not only wrongly advised Edward he had no duty to Salvatore with regard to the purchase of Anthony's interest in the partnership, but acted as Edward's lawyer in a transaction that conflicted with his duty to the partnership, and then refused to give Salvatore the information he requested after the sale had occurred. See generally Keatinge, The Implications of Fiduciary Relationships in Representing Limited Liability Companies and Other Unincorporated Associations and Their Partners or Members, 25 Stetson L. Rev. 389, 401-403 (1995).

Neither *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, cert. denied, 493 U.S. 894 (1989), nor *Van Brode Group, Inc.* v. *Bowditch & Dewey*, 36 Mass. App. Ct. 509 (1994), on which the defendant relies, requires a contrary result. In *Robertson* v. *Gaston Snow & Ely Bartlett*, the plaintiff was a stockholder of a newly reorganized corporation. The court rejected his claim of malpractice against the law firm representing the corporation on the ground that, as a matter of fact, the plaintiff did not have an attorney-client relationship with the law firm. The court concluded only that "[a]n attorney for a corporation does not simply by virtue of that capacity become the attorney for . . . its officers, directors or shareholders." *Id.* at 522, quoting from 1 Mallen & Smith, Legal Malpractice § 7.6 (3d ed. 1989). The issue of a fiduciary duty was never raised.

In *Van Brode Group, Inc.* v. *Bowditch & Dewey*, the plaintiffs, three related corporations, argued that the trial judge had erred in dismissing their claim of breach of fiduciary duty against the law firm representing a fourth related corporation. Noting the plaintiff's reliance on *Schaeffer*, as well as on *Robertson* v. *Gaston Snow & Ely Bartlett*, we recognized the possibility that a "fiduciary duty count, comprehending possible obligations to nonclients, could be read as stating a different theory of liability from [a] legal malpractice count, which is normally thought of as relating only to duties owed to clients." *Van Brode Group, Inc.* v. *Bowditch & Dewey*, 36 Mass. App. Ct. at 516. In that case, however, we found no reversible error in the allowance of the defendant's motion for a directed verdict on the fiduciary duty count because the judge's instructions to the jury on the

legal malpractice count in effect covered the subject matter of a fiduciary duty.

Thus, although far from a model of clarity, the plaintiff's complaint may be read to assert a claim for breach of fiduciary duty. Compare *Coolidge Bank & Trust Co.* v. *First Ipswich Co.,* 9 Mass. App. Ct. 369, 370 (1980) ("Although improbable in the extreme, the broad facts alleged . . . make out the framework of a legally cognizable grievance" [citations omitted]). Accordingly, since it "appears that the plaintiff may be entitled to [some] form of relief, even though . . . the theory on which [she] seems to rely may not be appropriate," her complaint should not have been dismissed. *Nader* v. *Citron,* 372 Mass. at 104. "Nor should a complaint be dismissed because it asserts a new theory of liability, *Capazzoli* v. *Holzwasser,* 397 Mass. 158, 165 (1986, Abrams, J., concurring); *Jenkins* v. *Jenkins,* 15 Mass. App. Ct. 934 (1983), because 'it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.' " *New England Insulation Co.* v. *General Dynamics Corp.,* 26 Mass. App. Ct. 28, 30 (1988), quoting from 5 Wright & Miller, Federal Practice and Procedure § 1357, at 603 & n.81 (1969 & Supp. 1987). See generally Fischer, Representing Partnerships: Who Is/Are the Client(s)?, 26 Pac. L.J. 961 (1995); Note: Representing General Partnerships and Close Corporations: A Situational Analysis of Professional Responsibility, 73 Tex. L. Rev. 919 (1995).

c. *Interference with valuable opportunity.* The judge appears to have interpreted count two of the plaintiff's complaint as alleging that the defendant is liable to the partnership as an entity as well as to Salvatore individually for the lost opportunity to purchase Anthony's share of the partnership. As to the first claim, the judge concluded that Salvatore lacked standing to bring a claim on behalf of the partnership. See *Shapira* v. *Budish,* 275 Mass. 120, 126 (1931). The plaintiff argues that since Edward, the wrongdoer, now owns fifty per cent of the partnership, and David "has not participated in these proceedings," this case constitutes an exception to the general rule requiring that all partners must be parties to a suit involving partnership rights. See *Gorovitz* v. *Planning Bd. of Nantucket,* 394 Mass. 246, 249 (1985). However, the plaintiff's failure to account for David in any way precludes her reliance on this argument. See *Shapira* v. *Budish, supra* at 126-127 (bill dismissed; no reason given to justify failure to join partner in suit).

As to Salvatore's claim as an individual, the judge ruled that the plaintiff's complaint did not allege facts necessary to prove a claim of intentional interference with contractual relations. The elements of such a claim are "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship"; (3) the defendant's intentional interference through improper motive or means; and "(4) the plaintiff's loss of advantage directly resulting from the defendant's conduct." *Powers* v. *Leno*, 24 Mass. App. Ct. 381, 384-385 (1987). *Kurker* v. *Hill*, 44 Mass. App. Ct. at 191. "A 'probable future business relationship from which there is a reasonable expectancy of financial benefit is enough.' " *Powers* v. *Leno*, 24 Mass. App. Ct. at 385, quoting from *Owen* v. *Williams*, 322 Mass. 356, 362 (1948). In dismissing the plaintiff's individual claim, the judge found that "[s]ince plaintiff admits that Salvatore never had conversations with Nellhaus regarding the disposal of Anthony's shares, it is clear that Nellhaus did not know of Salvatore's possible willingness to acquire those shares for himself." This finding ignores the requirement that, in deciding a motion to dismiss, a court must accept as true all allegations in the plaintiff's complaint, and any inferences fairly drawn from them. *Nader* v. *Citron*, 372 Mass. at 98.

The allegations of the complaint make clear that Edward knew of Salvatore's probable interest in Anthony's share. The partners had discussed the possibility of the partnership buying the share. Edward not only kept secret his own intentions, but also misinformed Anthony's heirs about Salvatore's interest. It is a fair inference that Salvatore's interest was the occasion for the defendant's advice to Edward that he was not legally bound to consult with Salvatore about the sale and for his later secretiveness when Salvatore sought information about the transaction. As counsel to the partnership, the defendant was familiar with the provisions of the partnership agreement, which gave the partnership the first option to buy Anthony's share and required a vote of the partners owning at least fifty-one per cent of the shares for "all determinations affecting the conduct of the affairs of the partnership." The defendant's advice to Edward, which violated the terms of the partnership agreement as well as Edward's fiduciary duty to his partners, led directly to Salvatore's loss of opportunity to buy Anthony's share of the partnership if the partnership did not exercise its right to do so. The allegations of the complaint were sufficient to survive the motion to dismiss count two.

d. *General Laws c. 93A.* The judge dismissed the c. 93A count on the ground that there was no attorney-client relationship between Salvatore and the defendant. The dismissal was proper. As in *Kurker* v. *Hill, supra,* the transaction underlying the plaintiff's claims here was " 'an internal business dispute,' . . . outside the 'conduct of any trade or commerce' within the meaning of G. L. c. 93A." 44 Mass. App. Ct. at 191, quoting from *First Enterprises, Ltd.* v. *Cooper,* 425 Mass. 344, 348 (1997), and *Zimmerman* v. *Bogoff,* 402 Mass. 650, 663 (1988). As in the case before us, *Kurker* v. *Hill* concerned discord over a family business transaction and allegations against the siblings' lawyers. Compare *Tetrault* v. *Mahoney, Hawkes & Goldings,* 425 Mass. 456, 462-463 (1997).

4. *Conclusion.* Count one of the plaintiff's complaint was properly dismissed as to a claim for legal malpractice, but states a claim for breach of fiduciary duty. The judgment as to that count is reversed. Count two states a claim for intentional interference with contractual relations as to Salvatore individually. Although the trial judge properly dismissed the plaintiff's claims of harm to the partnership in count two, we are mindful of "the strong policy of our rules of civil procedure in favor of allowing the amendment of pleadings." *Capazzoli* v. *Holzwasser,* 397 Mass. at 161. Accordingly, the judgment as to count two is reversed, and the plaintiff is to have thirty days from the Superior Court's receipt of the rescript in this case to move in that court for leave to file an amended complaint on behalf of the partnership. See *Balsavich* v. *Local 170, Intl. Bhd. of Teamsters,* 371 Mass. 283, 287-288 (1976). Action on the motion to amend shall be at the discretion of the Superior Court judge. The portion of the judgment dismissing count three is affirmed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*