Salinger, Kenneth W., J.
This is the second lawsuit in which W. Robert Allison challenges an alleged conspiracy to freeze out the minority members of Applied Tissue Technologies, LLC (“ATT”). In the first action, Allison is suing the majority members of ATT, which are Elof Eriksson (“Eriksson”) and the two trustees of The Elof Eriksson Irrevocable Trust-2003 (“Eriksson Trust”), Gudren Eriksson and Karl Proppe, who is ATTs chief executive officer and was also sued individually (the “Eriksson Defendants”). In this second action, the other minority members of ATT—Christian Baker, individually, and Blake Allison, as trustee of The W. Robert Allison 2003 Irrevocable Trust (“Allison Trust”)—join Allison as plaintiffs. This complaint also adds claims against two lawyers and law firms that represented ATT and allegedly represented Eriksson. The new defendants are Wilmer Cutler Pickering Hale and Dorr, LLP (“WilmerHale”), Gunderson Dettmer Stough Villeneuve Franklin & Hachigian, LLP (“Gunderson”), Gaiy R. Schall, and Emma Eriksson Broomhead (the “Law Firm Defendants”). Defendants move to dismiss all claims in this action.
The Court will ALLOW all three motions to dismiss. It will order that the claims against the Eriksson Defendants be dismissed without prejudice under Mass.R.Civ.P. 12(b)(9), and that the claims against the Law Firm Defendants be dismissed with prejudice under Rule 12(b)(6).
With respect to the Eriksson Defendants, this action will be dismissed under Rule 12(b)(9) because there is a prior pending action against them that asserts the same claims. If Plaintiffs believe that the relief sought by Allison against the Eriksson Defendants in the 2013 Action cannot be granted unless Proppe and Gudren Eriksson join as plaintiffs, then they should move to add them as necessary parties to the prior action pursuant to Mass.R.Civ.P. 19(a).
With respect to the Law Firm Defendants, this action is not subject to dismissal under Rule 12(b)(9) because there is no prior pending action that will resolve the claims against them. The claims against these defendants must nonetheless be dismissed for failure to state any claim upon which relief can be granted. The facts alleged do not plausibly suggest that the Law Firm Defendants owed any fiduciary duly to the Plaintiffs, that they knowingly conspired with or aided and abetted Eriksson in breaching his fiduciary *268 duties to the minority shareholders, or that their provision of legal services in connection with an in-trafirm dispute constitutes “trade or commerce” that implicates G.L.c. 93A.
1. Factual Allegations
Plaintiffs’ first amended complaint alleges that the following facts are true.
Eriksson and Allison formed ATT in 2000 to develop, market, and sell wound therapy technologies. ATT was created as a Massachusetts limited liability company. ATT has always been a closely held corporation because it has a small number of members, there is no ready market for its membership interests, and members holding a substantial majority of the membership interest have actively participated in company management. Eriksson contributed three-quarters of the initial capital and received a 75 percent membership interest in ATT; Allison contributed one-quarter and received a 25 percent interest. The ownership percentages changed over time as a result of transactions that are not relevant here. As of May 2012, Eriksson owned 55.5% of ATT, the Eriksson Trust owned 20%, Allison owned 14.66%, the Allison Trust owned 7.84%, and Baker owned 2%.
ATT adopted an amended operating agreement in 2003 which provides, among other things, that; the members have exclusive management control over ATT, which they exercise by votes in proportion to their percentage interest in the company; the agreement cannot be amended unless both Eriksson and Allison agree in writing; the percentage interest of each member in net profits cannot be reduced or diluted without that member’s consent; if any member chooses to provide additional funds to the company, those advances are to be treated as loans for which ATT will pay interest at the prime rate; all members were entitled to examine ATTs books and records for purposes reasonably related to their interest in the company; and all members owed each other a duty of good faith.
By early 2012 ATT was facing financial difficulties. Although the company’s assets exceeded its liabilities, ATT was facing a cash crunch because its expenses continued to exceed its revenues. According to the complaint, “Allison and Eriksson held sharply divergent views as to how to proceed.” Eriksson offered to invest more money in ATT in exchange for additional equity, but was unwilling to loan the company money. Allison would not accept any dilution of his interest in ATT unless additional capital was provided by new, outside investors who brought new management to the company. Proppe, who was ATTs chief executive officer, urged Eriksson to take control of ATT.
Eriksson and Proppe retained lawyers to help Eriksson find a way to acquire a larger ownership interest in ATT in exchange for making additional capital contributions to the company. Eriksson reached out to Broomhead, his daughter, who was an associate at Gunderson. She introduced Eriksson to a second lawyer, Gary Schall, who was another Gunderson associate. Eriksson decided to hire them both. As a result, ATT (acting through Proppe) signed an engagement letter with Gunderson, specifying that the firm represented ATT and not any individual member. In early May 2012 Schall moved to WilmerHale, which was then also retained to represent ATT but no individual members.
Schall and Broomhead in fact represented both ATT and Eriksson. In early 2012 they arranged for an appraiser to value ATT, and obtained necessary financial information about the company through Proppe. Plaintiffs do not allege that the appraiser was given inaccurate or incomplete information, or that the completed appraisal was inaccurate. Based on the results of that appraisal, Schall drafted an offer by Eriksson to purchase the minority members’ ownership interests in ATT. Eriksson conveyed that offer to Allison on May 6, 2012, without revealing that he had been assisted by counsel. Allison rejected the offer on May 8, 2012. In response, Eriksson told Allison that he intended to dissolve and liquidate ATT.
In May 2012, Schall and Broomhead helped Eriksson restructure ATT by merging it into a new corporate entity. They first created a new Delaware limited liability company with the same name (referred to as “ATT Delaware” in this decision) but a new operating agreement that did not contain the same protections for minority interest holders. Among other changes, the operating agreement for ATT Delaware centralizes control in Eriksson and the Eriksson Trust, virtually eliminates the voting rights of ATTs minority members, and eliminates the explicit fiduciary duty that all members owed to each other. Eriksson and the trustees of the Eriksson Trust voted to merge ATT into ATT Delaware. They did so without informing Allison and the other minority owners and without holding a member meeting. Eriksson and Proppe informed Allison of this transaction on May 29, 2012.
Thereafter, Eriksson and the Eriksson Trust invested additional capital in ATT Delaware, increased their ownership interest in the parent, and substantially diluted the minority owners’ interests. These transactions would not have been allowed under ATTs original operating agreement without the consent of Allison and the other minority owners.
The complaint alleges that Schall and Broomhead “incorrectly advised” Eriksson and the Eriksson Trust “that the merger could be accomplished without holding a member meeting and without notice to the Minority Members.” It also alleges that these two lawyers deliberately concealed their activities so that Eriksson could accomplish the alleged freeze-out before Allison and the other minority owners discovered what they had done.
2. Rule 12(b)(9) Motions
All of the Defendants have moved to dismiss this action under Mass.R.Civ.P. 12(b)(9) on the ground that there is a prior pending action arising from the identical facts and involving the same basic claims.
*269 2.1. Prior Civil Action
Allison filed his first lawsuit against Eriksson, Pro-ppe, and the trustees of the Eriksson Trust in May 2013. See Allison v. Eriksson et al., Suffolk Sup.Ct. no. 1384-01858-BLS1 (the “2013 Action”). The complaint in the 2013 Action alleges that the Eriksson Defendants caused ATT to merge into ATT Delaware, and that this was an unlawful freeze out of ATT’s minority members. Allison asserted claims for breach of contract, intentional interference with advantageous business relations, breach of fiduciary duty, and civil conspiracy against each of the Eriksson Defendants. Judge Kaplan granted partial summary judgment dismissing the intentional interference claim, dismissing the fiduciary duty claim as against Gudrun Eriksson and Proppe individually, and dismissing the conspiracy claim as against the trustees of the Eriksson Trust.
In the 2013 Action, Allison seeks final judgment declaring that the merger of ATT into ATT Delaware is unlawful, null, and void, and ordering the Eriksson Defendants to take all actions necessary to revive ATT and to transfer all of the company’s assets and business back to ATT at Defendants’ expense. Allison also seeks monetary compensation.
The 2013 Action is still pending. Trial is scheduled to begin April 4, 2016.
2.2. Claims against the Eriksson Defendants
The remaining claims in the 2013 Action are essentially identical to the claims in this 2015 action that are asserted against the Eriksson Defendants, and seek essentially identical relief against those defendants.
The only difference between the two actions with respect to the Eriksson Defendants is that the other two minority members of ATT have been joined with Allison as plaintiffs in this second action. According to Plaintiffs, the only reason Christian Baker and Blake Allison have been added as claimants is because “it may become necessary that all members of ATT be joined in the underlying action” in order for the court to grant any or all of the relief requested by Allison. Plaintiffs represent that Baker and Blake Allison will not be witnesses at trial, as they are not percipient witnesses to any disputed issue of fact, and thus that adding them as plaintiffs will not delay trial of the 2013 Action. If that is all true, it might justify a motion to join Baker and Blake Allison as necessary parties to the prior action pursuant to Rule 19(a). But it does not justify a second, duplicative lawsuit against the Erik-son Defendants.
Rule 12(b)(9) authorizes a judge to dismiss a civil lawsuit due to the “pendency of a prior action in a court of the Commonwealth.” This rule codifies the longstanding common-law principle that “a party ought not to be vexed by the pendency at the same time of two actions for the same cause at the instance of the same plaintiff,” which was enforced (before the rules of civil procedure were adopted in 1974) by sustaining either a demurrer or a plea in abatement, which had the same effect as allowing a motion to dismiss in modern practice. See Jacoby v. Babcock Artificial Kidney Ctr., Inc., 364 Mass. 561, 563 (1974) (demurrer); Alpert v. Mercury Pub. Co., 272 Mass. 39, 42 (1930) (plea in abatement). The longstanding rule against duplicative actions applied with full force where, as here, the plaintiffs seek declaratory and equitable relief. See Jacoby, supra (“Generally ‘[a] court cannot declare rights as to matters involved in a prior pending action’ ”) (quoting Anderson, Actions for Declaratory Judgments (2d ed.) §209 (1951)); Stahler v. Sevinor, 324 Mass. 18, 23 (1949) (prior pending action rule applied whether both suits were in equily, both were in law seeking monetary damages, or one was in equity and one in law).
“The rule prohibits the long-barred practice of claim-splitting.” Lyons v. Duncan, 81 Mass.App.Ct. 766, 771 (2012), quoting M.J. Flaherty Co. v. United States Fid. & Guar. Co., 61 Mass.App.Ct. 337, 339 (2004). Thus, Rule 12(b)(9) furthers the same interest injudicial efficiency as the doctrine of res judicata or claim preclusion, which bars a plaintiff from asserting claims in a second action that could have brought in a prior proceeding concerning the same transactions or events. See, e.g., Massaro v. Walsh, 71 Mass.App.Ct. 562, 565-66 (2008). As a result, “(a) dismissal under [Rule] 12(b)(9) maybe appropriate if the parties and issues are identical to those in the prior pending action.” Harvard Cmty. Health Plan, Inc. v. Zack, 33 Mass.App.Ct. 649, 652 (1992); accord, Lyons, M.J. Flaherty, supra.
The Court concludes that the prior pending action rule applies here, even though Baker and Blake Allison are not parties to the 2013 action. Although the rule applies most clearly where the parties in both actions are identical, that is not necessarily required, as the United States Supreme Court made clear long ago. “ ‘When the pendency of [a prior] suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same. The identity in these particulars should be such that if the pending case had already been disposed of, it could be pleaded in bar as a former adjudication of the same matter between the same parties.” Watson v. Jones, 80 U.S. 679, 715 (1871) (emphasis added). “(T]he true test of the sufficiency of a plea of ‘other suit pending’ in another forum [i]s the legal efficacy of the first suit, when finally disposed of, as ‘the thing adjudged,’ regarding the matters at issue in the second suit.” Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000), quoting United States v. The Haytian Republic, 154 U.S. 118, 124 (1894). In other words, “the test as *270 ordinarily stated is whether the claims set up are legally the same so that judgment in one is a bar to the others.” Sutcliffe Storage & Warehouse Co. v. United States, 162 F.2d 849, 851 (1st Cir. 1947). Now that the doctrines of claim and issue preclusion have been broadened to apply even where the parties in a second action are not identical to those in a prior action, it follows that the “prior pending action" doctrine has expanded in parallel.
It appears that Baker and Blake Allison would most likely be bound by any judgment in the 2013 Action even if they are never joined as necessary parties. If Alison were to prevail in the prior pending action, the two other minority members of ATT would probably prevail in asserting that the Eriksson Defendants are bound by the judgment with respect to the two other minority members of ATT as well, since it appears that the Eriksson Defendants will have had the opportunity to litigate the issues fully and a strong incentive to appeal any adverse judgment. See, e.g., Pierce v. Morrison Mahoney LLP, 452 Mass. 718, 731 (2008) (allowing offensive collateral estoppel to benefit non-party to prior proceeding); Aetna Casualty & Sur. Co. v. Niziolek, 395 Mass. 737, 745 (1985) (same). If the Eriksson Defendants prevail in that prior action over Alison, the other minority members would be bound by that judgment under the doctrine of claim preclusion or res judicata. “Claim preclusion requires proof of three elements: ‘(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits.’ ” Tynan v. Attorney General, 453 Mass. 1005 (2009) (rescript), quoting DaLuz v. Department of Correction, 434 Mass. 40, 45 (2001). Privity, for this purpose, requires “a very close relationship bordering on a complete identity of interest.” Mongeau v. Boutelle, 10 Mass.App.Ct. 246, 250 (1980) (internal quotations and citations omitted). Plaintiffs have conceded that the interests of Baker and Blake Alison are identical to those of Alison, and the claims they seek to assert against the Eriksson Defendants in this action are identical to the claims that Alison is already asserting against the same defendants in the 2013 Action. And it appears to be undisputed that Alison is adequately representing the interest of all the ATT minority members in that prior pending action.
Since Baker and Blake Allison could not bring a second action against the Eriksson Defendants if final judgment had already entered in the 2013 Action, the prior pending action similarly bars the assertion of duplicative claims against the same defendants in this case. The Court will therefore dismiss the claims against the Eriksson Defendants under Rule 12(b)(9). See, e.g., Weiss v. Grolman, Suffolk Sup.Ct. no. 2011-03824A, 30 Mass. L. Rptr. 295, 2012 WL 4937311 (2012) (Fabricant, J.) (dismissing action under similar circumstances).
2.3. Claims Against the Law Firm Defendants
In contrast, it would not be appropriate to dismiss the claims against the Law Firm Defendants under Rule 12(b)(9). Neither WilmerHale, Gunderson, Schall, nor Broomhead is a party to the 2013 Action. As a result, final judgment in that case will not necessarily resolve the claims asserted against them here.
The Court recognizes that if the Eriksson Defendants prevail in the 2013 Action then the doctrine of issue preclusion may bar any of the Plaintiffs from seeking damages against the Law Firm Defendants. Ater all, if the merger of ATT into ATT Delaware is found to be lawful, then it is hard to see how Plaintiffs could prevail on their claims that the Law Firm Defendants acted unlawfully in helping the Eriksson Defendants merge the two companies. Indeed, a judgment in favor of the Eriksson Defendants in the prior action is likely to bar the claims against the Law Firm Defendants under the doctrine of issue preclusion or collateral estoppel. See generally Home Owners Fed. Sav. & Loan Ass’n v. Nw. Fire & Marine Ins. Co., 354 Mass. 448, 455 (1968) (“one not a parly to the first action may use a judgment in that action defensively against a party who was a plaintiff in the first action on the issues which the judgment decided”).
But if Alison were to prevail in the 2013 Action, it seems unlikely that a judgment in that case against the Eriksson Defendants would preclude the Law Firm Defendants from contesting the claims against them for monetary damages. The claims against the Law Firm Defendants in this case for breach of fiduciary duly, tortious aiding and abetting, and violating G.L.c. 93A are materially different from the claims asserted against the Eriksson Defendants in the 2013 Action. Cf. M.J. Flaherty Co., 61 Mass.App.Ct. at 339 (Rule 12(b)(9) dismissal inappropriate where “there is a fundamental difference between the claims ... in the first and second actions"). Athough the conspiracy claim against the Law Firm Defendants arises from the same facts and concerns the same alleged conspiracy at issue in the 2013 Action, the Law Firm Defendants would have a powerful argument that it would be unfair to preclude them from offering their own defense to that claim, especially since Alison’s motion to add allegations against the Law Firm Defendants to his complaint was denied in the 2013 Action solely on the ground that the motion was brought too close to trial. Cf. Pierce v. Morrison Mahoney LLP, 452 Mass. 718, 730 (2008) (“Ultimately, ‘[f]airness is the “decisive consideration” in determining whether to apply offensive issue preclusion,’ ” quoting Matter of Cohen, 435 Mass. 7, 16 (2001)). The fact that Allison’s motion to add allegations against the Law Firm Defendants to his complaint was denied in the 2013 Action, on the ground that the motion was brought too close to trial, does not necessarily mean the claims against the Law Firm Defendants in this case should be dismissed *271 because of the prior pending action. See Hurwitz v. Bocian, 41 Mass.App.Ct. 365, 369 (1996).
The Law Firm Defendants argue that Plaintiffs were dilatory in asserting claims against them for damages. Even assuming that were true, unwarranted delay would alone not be a reason to dismiss an action under Rule 12(b)(9). This is in essence an argument that the claims against the Law Firm Defendants are barred by the equitable doctrine of laches. But Plaintiffs are asserting legal claims for monetary damages against the Law Firm Defendants, not equitable claims for injunctive relief. Laches “is not generally available as a defense to a legal claim. As long as there is no statute of limitations problem, unreasonable delay in pressing a legal claim does not, as a matter of substantive law, constitute laches.” Srebnick v. Lo-Law Transit Management, Inc., 29 Mass.App.Ct. 45, 49-50 (1990).
3. Rule 12(b)(6) Motion to Dismiss Claims Against the Law Firm Defendants
As an alternative to their request for dismissal under the prior pending action doctrine, the Law Firm Defendants also seek dismissal under Mass.R.Civ.P. 12(b)(6) on the ground that the complaint fails to state any claim against them on which relief can be granted.
To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, if true, would “plausibly suggest! ] ... an entitlement to relief.” Lopez v. Commonwealth, 463 Mass. 696, 701 (2012), quoting Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). For the purpose of deciding the Law Firm Defendants’ motions to dismiss the claims against them, the Court must assume that the factual allegations in the complaint and any reasonable inferences that may be drawn from the facts alleged are true. See Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 223 (2011). In so doing, however, it must “look beyond the conclusoiy allegations in the complaint and focus on whether the factual allegations plausibly suggest an entitlement to relief.” Maling v. Finnegan, Henderson, Farabow, Garrett & Danner, LLP, 473 Mass. 336, 339 (2015), quoting Curtis v. Herb Chambers 1-95, Inc., 458 Mass. 674, 676 (2011).
3.1. Breach of Fiduciary Duty Claim
Under the circumstances of this case, none of the Law Firm Defendants owed any fiduciary duty to the minority members of ATT, as a matter of law. The claim against them for breach of fiduciary duty must therefore be dismissed.
The complaint alleges that WilmerHale and Gunderson were retained to represent ATT but not its individual members, that in practice Attorneys Schall and Broomhead represented both ATT and Eriksson, and that none of the Plaintiffs ever had any communications or other dealings with either of these lawyers, or even knew that they were providing any legal counsel or services to ATT or Eriksson.
Plaintiffs do not allege that they were ever clients of any of the Law Firm Defendants, so there was no attorney-client relationship that gave rise to any fiduciary duty to Plaintiffs. “[Cjounsel for a closely held corporation does not by virtue of that relationship alone have an attorney-client relationship with the individual shareholders!.]” Clair v. Clair, 464 Mass. 205, 216 (2013), quoting Schaeffer v. Cohen, Rosenthal, Price, Mirkin, Jennings & Berg, P.C., 405 Mass. 506, 513 (1989). A lawyer retained by a corporation represents the corporate entity, not its shareholders, employees, or directors. Cf. Mass. R. Prof. Conduct 1.13. As a result, “attorneys serving as counsel to a corporation owe a duty to act according to the interests of the corporation and not in the interests of a nonclient stockholder, director, officer, employee, or other representative of the corporation.” Clair, supra, quoting Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 524 n.5, cert. denied, 493 U.S. 894 (1989).
It remains an unsettled question whether, under Massachusetts law, “an attorney for a close corporation owes a fiduciary duty to the individual shareholders” under some circumstances. Schaeffer, 405 Mass. at 513. The SJC identified this as an issue but did not reach or decide it in Schaeffer. Nor did the Appeals Court decide this issue nine years later in the Kurker case, because the plaintiff in that case never “allege[d] that any of the defendant attorneys acted as corporate counsel” to the close corporation at the center of that dispute. See Kurker v. Hill, 44 Mass.App.Ct. 184, 187 (1998).
But even if such a fiduciary duty exists for some purposes, as a matter of law that duly would have to be construed and limited so as not to conflict with the attorney’s overriding duty of undivided loyally to her or his corporate client. Massachusetts law does not impose on a lawyer any duty of care to a third party whose interests are adverse to those of the lawyer’s client, because doing so “would potentially conflict with the duty the attorney owes to his or her client.” See Lamare v. Basbanes, 418 Mass. 274, 276 (1994) (lawyer representing husband in divorce action and care and protection proceeding owed no duty of care to client’s wife or children). “It is the potential for conflict that is determinative” in narrowly construing any duty owed by an attorney to a non-client, “not the existence of an actual conflict.” Miller v. Mooney, 431 Mass. 57, 63 (2000) (lawyer representing client in preparation of will owed no duty of care to client’s children); accord Spinner v. Nutt, 417 Mass. 549, 553-54 (1994) (lawyer representing trustee owed no duty of care to trust’s beneficiaries).
The Law Firm Defendants could not have owed a fiduciaiy duty to Allison and the other minority members because, as the allegations of the amended complaint make clear, the potential conflict between ATT and Plaintiffs was obvious. See Robertson, 404 Mass. at 524-25 (lawyer representing closely-held family *272 corporation in connection with corporate reorganization owed no duty of care to family member who was minority stockholder and corporate president and who opposed the reorganization). Indeed, in the amended complaint Plaintiffs allege that the Law Firm Defendants’ representation of ATT and Eriksson was adverse to and in actual conflict with the interests of Allison and the other minority members of ATT. Eriksson, who owned more than half of ATT and thus exercised control over its corporate decision making, had concluded that ATT needed an infusion of capital, which he was only willing to provide if he could increase his ownership interest in the company. Eriksson caused ATT to hire the Law Firm Defendants to help ATT carry out Eriksson’s plans. Allison had already made clear that he and the other minority members would oppose any attempt by Eriksson to dilute their interests in the company unless new capital was provided by someone new. Since Allison was dead set against the course of action that Eriksson thought was best, there was no way that any lawyer could simultaneously represent ATT with respect to these issues and also comply with a conflicting fiduciary duty of loyalty to Allison. Given this obvious potential for conflict, the Law Firm Defendants could not be required to bear a fiduciary duty to ATT’s minority members. ‘The principles of Lomare"—also applied in Robertson, Miller, and Spinner—"prohibit the imposition of a duty between" the Law Firm Defendants and the minority members of ATT “that potentially would conflict with” the lawyers’ “paramount duty of undivided loyalty” to ATT. Bartle v. Berry, 80 Mass.App.Ct. 372, 387, rev. denied, 460 Mass. 1116 (2011) (lawyer representing business entity in lawsuit against corporate defendant owed no duty of care to individual serving as class representative in consumer class action against same corporate defendant).
The decision in Cacciola v. Nelhaas, 49 Mass.App.Ct. 746 (2000), is readily distinguishable from this case and thus does not support Plaintiffs’ breach of fiduciary duty claim against the Law Firm Defendants. In Cacciola, the Appeals Court noted that an attorney for a close corporation may assume a fiduciary duty to a shareholder who “reposed . . . his trust and confidence” in the attorney as a result of their “close interaction.” Id. at 751, quoting Fassihi v. Sommers, Schwartz Silver, Schwartz & Tyler, P.C., 107 Mich.App. 509, 515 & 516 (1981); accord Van Brode Group, Inc. v. Bowditch & Dewey, 36 Mass.App.Ct. 509, 516 (1994). In evaluating the motion to dismiss filed in that case, the Cacciola court applied the now superseded standard that “[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Cacciola, supra, at 749, quoting Nader v. Citron, 372 Mass. 96, 98 (1977), and Conley v. Gibson, 355 U.S. 41, 45-46 (1957). And it concluded that the shareholder’s breach of fiduciary duty claim against the corporation’s attorney should not be dismissed because the lawyer “may have owed a fiduciary duty” to the shareholder, depending on what facts were developed during discovery. Id. at 752.
Here, in contrast, the amended complaint alleges that none of the Plaintiffs ever interacted with any of the Law Firm Defendants or even knew they were advising ATT. Furthermore, the old “no set of facts” standard established in Nader and Conley has now been “retire[d]” and replaced with the more demanding standard discussed above. See Iannachino, 451 Mass. at 636. Since Plaintiffs have not alleged any facts plausibly suggesting that they closely interacted with and placed great trust and confidence in ATT's lawyers, the legal hook that kept the breach of fiduciary duty claim alive in Cacciola is not present here.
In any case, even if the Plaintiffs alleged that they had relied upon services rendered or advice provided by the Law Firm Defendants, which they do not, the law would still not impose on the Law Firm Defendants a duty of reasonable care to the Plaintiffs because the Plaintiffs’ interests were likely to conflict with the interests of ATT, the Law Firm Defendants’ actual client. See Bratcher v. Moriarty, Donoghue & Leja, P.C., 54 Mass.App.Ct. 111, 116 (2002) (lawyer representing co-administratrix of estate and spouse of decedent in wrongful death action owed no duty of care to co-administrator of estate and father of decedent, notwithstanding father’s allegation that lawyer promised father would be reimbursed by estate for charges of administration and funeral expenses father had paid on estate’s behalf).
Plaintiffs’ reliance on Chambers v. Gold Medal Bakery, 464 Mass. 383 (2013), is also misplaced. Chambers holds that a director in a closely held corporation who is “advancing interests shared with the corporation” is “entitled to access [the] corporation’s confidential communications with counsel,” and that “[a] director motivated by adverse interests is not so entitled.” Id. at 395. In the 2013 Action, Judge Billings ruled that Allison and the other members of ATT “acted as the functional equivalent of Directors in a traditional business corporation,” that as a result Allison was entitled under Chambers to discover attorney-client communications with Eriksson or others acting on ATT’s behalf, but that Allison is not entitled to see or obtain attorney-client communications that occurred after ATT was merged into ATT Delaware because since that time Allison’s interests have been “materially adverse to those of ATT Delaware.”[1] Although Chambers (like Judge Billings’ ruling) only concerned an objection based on the attorney-client privilege to discovery sought by a director during ongoing litigation with the close corporation, the Supreme Judicial Court made clear that the right of a non-adverse director to access the company’s communications with its lawyers applied outside the context of litigation as well. ‘The principle that directors have equal access to legal advice rendered to the corporation *273 stems from their joint responsibilily for management of the corporation." Chambers, 464 Mass, at 394.
Nothing in Chambers imposes on a close corporation’s lawyers any fiduciary duty to the company’s directors or voting members, or any other obligation to provide directors or their equivalent with legal counsel or advice. Nor did Chambers mandate that a close corporation’s lawyers must disclose their communications with the corporation to all directors or voting members in situations where the lawyers are not responding to formal discovery served as part of a civil action. Rather, it suggests that directors in a close corporation are entitled to obtain the company’s attorney-client communications from the corporation, except where a director’s interests are adverse to those of the corporation. Cf. Chambers, supra, at 392-93 & n.25 (distinguishing application of attorney-client privilege and work product doctrines from discovery disputes with statutory rights of directors and shareholders to inspect corporation’s books and records). Thus, Plaintiffs’ allegations that the Law Firm Defendants concealed their role as counsel to ATT and Eriksson and kept the legal advice they were giving to their clients confidential do not support the breach of fiduciary duty claim against the Law Firm Defendants.
3.2. Aiding and Abetting Claim
The amended complaint does not allege facts plausibly suggesting that the Law Firm Defendants knew that Eriksson was breaching his fiduciary duties to the minority members of ATT. As a result, it does not assert a viable claim that the Law Firm Defendants aided and abetted Eriksson in breaching his fiduciary duty.
To make out a viable claim that the Law Firm Defendants are liable for aiding and abetting the commission of a tort, Plaintiffs must allege facts plausibly suggesting that: (1) some other party “committed the relevant tort,” (2) the Law Firm Defendants knew that the other party “was committing the tort,” and (3) the Law Firm Defendants “actively participated in or substantially assisted in [the] commission of the tort.” Go-Best Assets Ltd. v. Citizens Bank of Massachusetts, 463 Mass. 50, 64 (2012); accord Arcidi v. National Ass’n of Govt. Employees, Inc., 447 Mass. 616, 623-24 (2006) (same for tort of aiding and abetting breach of fiduciary duty). Thus, to make out a viable claim that a lawyer aided and abetted their clients’ tortious breach of fiduciary duty, a plaintiff must alleged facts plausibly suggesting that the lawyer “knew of the breach and actively participated in it such that he or she could not reasonably be held to have acted in good faith.” Spinner, 417 Mass, at 556 (affirming Rule 12(b)(6) dismissal).
Of particular import here, “(a]n allegation that the [clients] acted under the legal advice of the defendants, without more, is insufficient to give rise to a claim that an attorney is responsible to third persons for the fraudulent [or otherwise tortious] acts of his clients.” Id. A lawyer does not become liable for aiding and abetting the commission of a tort by a client merely because the lawyer advised the client that it could lawfully engage in some course of conduct, the client did what the lawyer advised was permissible, and it turned out that the client’s actions were tortious. Rather, a lawyer may only be sued for aiding and abetting a client’s breach of fiduciary duty if the complaint alleges facts plausibly suggesting “that the defendant knew of the breach and actively participated in it such that he or she could not reasonable be held to have acted in good faith.” Id.
Plaintiffs do not allege that any of the Law Firm Defendants knew that the Eriksson Defendants were engaged in or attempting to commit any breach of the fiduciary duties they owed to Plaintiffs. Although paragraph 19 of the complaint alleges that Schall and Broomhead “incorrectly advised” the majority members that the merger of ATT into ATT Delaware “could be accomplished without holding a member meeting and without notice to the Minority Members,” nowhere does the complaint allege that either lawyer knew that Eriksson and the other minority members would violate their fiduciary duties by doing so. To the contrary, the amended complaint merely alleges that ATT and Eriksson were acting under legal advice when they implemented the merger transaction that Plaintiff claims was in violation of Eriksson’s fiduciary duly to the minority members. Under Spinner, that is not enough to state a claim for aiding and abetting a breach of fiduciary duty against the Law Firm Defendants.
The further allegations that Schall and Broomhead arranged to have ATT appraised, and that Eriksson relied on the results of that appraisal in making his offer to buy out the minority members, do not support a claim for aiding and abetting either, for at least three reasons. First, Plaintiffs do not allege that the Law Firm Defendants withheld material information from or provided inaccurate information to the appraiser. Second, Plaintiffs do not allege that the appraisal was inaccurate. Third, in any case, Plaintiffs allege that Allison rejected the buyout offer that was allegedly based on the appraisal. Thus, even if the appraisal had somehow been done incorrectly, it could not have caused Plaintiffs to suffer any harm.
3.3. Conspiracy Claim
The claim against the Law Firm Defendants for civil conspiracy fails to state a viable claim for much the same reason.
To state a viable claim for conspiracy, a plaintiff must allege facts plausibly suggesting that a group of tortfeasors acted together either (1) to exercise some power of coercion over the plaintiff that they would not have had if they had acted independently, or (2) pursuant to “a common plan to commit a tortious act.” Kurker, 44 Mass.App.Ct. at 188-89; accord Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1563-64 (1st *274 Cir. 1994) (applying Massachusetts law). Plaintiffs allege the second kind of civil conspiracy, involving a purportedly tortious “common plan.” With respect to the second kind of civil conspiracy, “the plaintiffs must show an underlying tortious act in which two or more persons acted in concert and in furtherance of a common design or agreement.” Bartle, 80 Mass.App.Ct. at 383-84. Thus, “(k]ey to this cause of action is a defendant’s substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan.” Kurker, supra, at 189.
For the reasons discussed above, the allegations in the amended complaint do not plausibly suggest that any of the Law Firm Defendants knew that they were helping Eriksson breach his fiduciary duties to the minority members of ATT. The lengthy allegations that the Law Firm Defendants knowingly helped Eriksson merge ATT into ATT Delaware are not enough to state a viable conspiracy claim against the Law Firm Defendants in the absence of factual allegations plausibly suggesting that these defendants knew that the merger would constitute a violation of Eriksson’s fiduciary duties. Cf. Spinner, 417 Mass, at 556.
3.4. Chapter 93A Claim
Finally, the claim against the Law Firm Defendants under G.L.c. 93A must also be dismissed because the facts alleged in the complaint do not plausibly suggest that the Defendants’ alleged misconduct occurred within “trade or commerce” within the meaning of that statute. “Violations of G.L.c. 93A require unfair or deceptive acts or practices ‘in the conduct of any trade or commerce.’ ” Office One, Inc. v. Lopez, 437 Mass. 113, 125 (2002), quoting G.L.c. 93A, §2. That is true whether a claim is asserted under §9 or under §11 of the statute. See Frullo v. Landenberger, 61 Mass.App.Ct. 814, 821 (2004).
The facts alleged in the complaint make clear that the Law Firm Defendants were not acting in trade or commerce, however. Plaintiffs allege that the Law Firm Defendants acted unfairly and deceptively in helping Eriksson implement transactions involving ATT—"the alleged freeze-out" of ATT’s minority members by merging ATT into ATT Delaware and the subsequent “alleged improper asserts sale” to the new corporate entity—that “could only be accomplished by” ATT’s “shareholders.” Kurker, 44 Mass.App.Ct. at 190-91. The dealings among and any dispute between the members of ATT would not implicate c. 93A because that statute does not apply to “disputes between parties in the same venture.” Szalla v. Locke, 421 Mass. 448, 451 (1995); accord, Zimmerman v. Bogoff, 402 Mass. 650, 662-63 (1988) (c. 93A held inapplicable to disputes among shareholders in close corporation). Similarly, as a matter of law the alleged misconduct of the Law Firm Defendants was necessarily outside the scope of c. 93A because Eriksson’s alleged freeze-out of ATT’s minority members was “principally a private grievance” involving an “internal business dispute.” Kurker, supra, at 191, quoting Zimmerman, supra, at 663, and First Enterprises, Ltd. v. Cooper, 425 Mass. 344, 438 (1997).
It is true that a lawyer who engages in the practice of law engages in trade or commerce with respect to the business dealings between the lawyer and her or his client. See Frullo, 61 Mass.App.Ct. at 822. But Plaintiffs were not clients of the Law Firm Defendants. For a lawyer to be liable under c. 93A to a non-client, the lawyer “must have been acting in a business context” and “engaged in trade or commerce with the plaintiffs.” Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 463 (1997) (affirming summaiy judgment on c. 93A claim brought by non-clients against attorneys); accord Miller v. Mooney, 431 Mass. at 65 (same). As discussed above, however, the facts alleged in the complaint do not plausibly suggest that the Law Firm Defendants were insinuating themselves directly into any business dealings or competition with any of the Plaintiffs.
This is not a case in which a lawyer’s actions implicate c. 93A because the lawyer allegedly made “knowing or negligent misrepresentations” to his client’s adversary in order to help his client undertake unfair and deceptive business practices. Contrast Nova Assignments, Inc. v. Kunian, 77 Mass.App.Ct. 34, 44 n.7 (2010). To the contrary, and as discussed above, the complaint alleges that none of the Plaintiffs ever had any dealings with any of the Law Firm Defendants. Nor is there any allegation that the Law Firm Defendants were competing with Plaintiffs in the market, and that the Law Firm Defendants gained some unfair business advantage by allegedly helping Eriksson breach his fiduciary duties to ATT’s minority members. Contrast Augat v. Aegis, 409 Mass. 165, 172 (1991) (company engaged in trade or commerce may be liable under c. 93A for gaining unfair advantage over competitor by deliberately helping competitor’s employee breach duty of loyalty owed to the competitor); Hanover Ins. Co. v. Sutton, 46 Mass.App.Ct. 153, 174 (1999) (same).
ORDER
The three pending motions to dismiss are all ALLOWED. Final judgment shall enter dismissing all claims against Elof Eriksson, Gudrun Eriksson, and Karl Proppe without prejudice, and dismissing all claims against Wilmer Cutler Pickering Hale and Dorr LLP, Gunderson Dettmer Stough Villeneuve Franklin & Hachigian LLP, Gary R. Schall, and Emma Eriksson Broomhead with prejudice.

 The assertion by WilmerHale and Schall that the Court may not consider Judge Billings’ ruling because it was not attached to or referenced in the complaint is without merit. For the purpose of deciding the motions to dismiss, the Court may and does take judicial notice of this ruling made in a related case. Cf. Reliance Ins. Co. v. City of Boston, 71 Mass.App.Ct. 550, 555 (2008) (records of related court proceedings are subject to judicial notice and may be considered m decidmg motion to dismiss).